ALVIN L. LEIGH, APPELLEE, V. H. S. GREEN, APPELLANT.*

FILED JUNE 19, 1901.  No. 9,838.

Commissioner's opinion, Department No. 3.

1. Service by Publication: AFFIDAVIT BEFORE FILING PETITION. Where service is had by publication, jurisdiction attaches, although the affidavit for service is sworn to before the filing of the petition, provided the interval between the two acts is so brief that no presumption can fairly arise of a change in the jurisdictional facts set forth in the affidavit.

2. Interval of Two Days. An interval of two days held too short to give rise to such presumption.

3. Affidavit: INFORMATION AND BELIEF. Where the facts required in an affidavit are of such a character that positive knowledge on the part of affiant is impossible, such affidavit may be made on information and belief.

4. ———: ———. An affidavit for service by publication is sufficient if made upon information and belief.

5. Affidavit Not to Inform Defendant But Court. An affidavit for service by publication is not for the information of the party to be served, but to enable the court to determine whether the action is one in which jurisdiction may be acquired by such service.

6. Affidavit, Sufficiency and Object. When such affidavit is sufficient to enable the court to determine whether the action is one of which jurisdiction may be acquired by service by publication, service based thereon is valid.

7. Affidavit: JURISDICTION. Affidavit examined, and held sufficient to give the court jurisdiction.

8. Attaching Creditor, Owner. An attaching creditor held not to be an owner within the meaning of section 4, article 5, chapter 77, Compiled Statutes.

*Rehearing allowed.

9. **Foreclosure of Tax Lien.** The holder of a tax lien may bring an action for the foreclosure in a state court and prosecute the same to a decree and sale of the land, notwithstanding the pendency of an action between other parties, in the federal courts, wherein such lands have been levied upon under an order of attachment.

APPEAL from the district court for **Knox county.** Heard below before ROBINSON, J. *Reversed.*

*Reed & Gross, James McCabe* and *W. R. Green,* for appellant.

*James C. Crawford, Clark C. McNish, Andrew R. Oleson, Anderson & Keefe* and *Woolworth & McHugh, contra.*

ALBERT, C.

On the 24th day of November, 1880, Erwin Davis held the record title to certain lands in Knox county. On the date mentioned Algernon S. Patrick commenced an action in the district court of that county and procured an order of attachment to be levied on said land. On the 18th day of April, 1882, the case was removed to the United States circuit court, wherein a judgment was rendered in favor of the plaintiff on the 21st day of January, 1890, and an order made for the sale of the lands for the satisfaction thereof. In pursuance of said order, on the 15th day of May, 1894, the lands were sold to Lionel C. Burr by the United States marshal, whose deed to Burr therefor was filed for record in the office of the clerk of Knox county on the 26th day of May, 1894. On the day the deed was executed Burr conveyed the premises to J. C. Crawford and R. C. Peters by warranty deed, which was recorded on the 28th day of May, 1894. On the 23d day of May, 1894, Crawford and Peters conveyed the land to Alvin L. Leigh, the plaintiff in this case. On the 28th day of December, 1882, and while said attachment proceedings were pending, a warranty deed to said lands, purporting to have

been executed by Erwin Davis to Henry A. Root on the 8th day of October, 1880, was filed for record in the office of the county clerk of Knox county. On the 12th day of May, 1894, in an action pending in the district court of Douglas county, wherein Algernon S. Patrick was plaintiff and Erwin Davis, Henry A. Root, J. N. H. Patrick and J. M. Woolworth were defendants, a decree was entered whereby the said deed from Davis to Root was canceled and set aside as fraudulent and void, as against the plaintiff in that case, and whereby the title to said land was quieted and confirmed in said plaintiff as against said Root. In 1891, several actions were brought in the district court for Knox county, wherein the Farmers Loan & Trust Company was plaintiff and Henry A. Root and different subdivisions of the land in controversy were defendants, for the foreclosure of certain tax liens, which actions so taken together involved the title to the land in controversy in this suit. In the same year a decree of foreclosure was entered in each case, and an order made directing the sale of said subdivisions, respectively, for the satisfaction of the amount found due by the respective decrees. In pursuance of these several decrees and orders the lands were sold by the sheriff of that county to H. S. Green, the defendant in the present action, and deeds of conveyance therefor were duly executed and delivered to said purchaser by the sheriff. The plaintiff in the present case claims title to the lands, basing his claim of title on the attachment proceedings hereinbefore mentioned; the defendant also claims title thereto, basing his claim of title on the proceedings had for the foreclosure of the tax liens. The present action was brought by the plaintiff, Alvin L. Leigh, against the defendant, H. S. Green, to quiet his title to the land in controversy. From a decree in favor of the plaintiff the defendant prosecutes an appeal to this court.

From the foregoing statement it will be seen that both parties trace their title to Erwin Davis. The sole question to be determined in this case is whether the plaintiff is

concluded by the proceedings had in the district court of Knox county for the foreclosure of the tax liens, by virtue of which the defendant claims title to the lands in controversy. The plaintiff assails those proceedings upon three grounds: (1) That the service was had by publication, and the affidavits therefor were not sufficient to authorize service by publication; (2) that there was no case made for proceedings against the land in any of said foreclosure proceedings, without impleading Algernon S. Patrick, who at the time said proceedings were brought had an attachment lien on the lands for the satisfaction of which the land afterwards sold; (3) that the proceedings to foreclose said liens were had during the time the land in controversy was under attachment in an action pending in the circuit court of the United States, and for that reason the proceedings to foreclose the tax liens were void.

The actions for the foreclosure of the tax liens were brought under article 5 of chapter 77 of the Compiled Statutes. Section 4 of that article is as follows: "Service of process in causes instituted under this chapter shall be the same as provided by law in similar causes in the district courts, and where the owner of the land is not known, the action may be brought against the land itself, but in such case the service must be as in the case of a nonresident; if the action is commenced against a person who disclaims the land, the land itself may be substituted by order of court for the defendant, and the action continued for publication." In each of the foreclosure cases, the subdivision of the land to be affected thereby was made a party as provided by the section just quoted, and service was had by publication. The affidavit in each case, except as to the land described, which varied according to the subdivision made a party, was as follows:

"In the District Court of Knox County, Nebraska.

FARMERS LOAN & TRUST COMPANY
vs.
HENRY A. ROOT AND N. E. $\frac{1}{4}$, SEC. 27, TWP. 31, RANGE 3 WEST 6TH P. M.

Affidavit for Publication of Notice.

"STATE OF IOWA, WOODBURY COUNTY, } ss.

"I, M. J. Sweeley, being sworn, do state that I am the attorney for the plaintiff above named; that this case is one of those named in section 77, title V., of the Code of Civil Procedure of the state of Nebraska, and is an action relating to real property in said state in which the defendants have or claim a lien or interest actual, or contingent, and the relief demanded consists, wholly or partially, in excluding the defendants from any interest therein; that the defendant Henry A. Root is a non-resident of said state of Nebraska; and that service of summons cannot be made on him within said state.

"I further state that the owner of the real estate involved in said action and described above is not known, all of which I verily believe to be true.

"(Signed)                                   M. J. SWEELEY.

"Subscribed and sworn to before me this 28th day of September, 1891.                    L. GREENWOOD,
        [SEAL.]                              "Notary Public."

The plaintiff insists that the affidavits were insufficient, and for that reason the court acquired no jurisdiction.

One objection urged against the affidavits is that they were sworn to some two days before the petitions were filed in the respective cases. The argument on this point, as we understand it, is that between the making of the affidavit and the filing of the petition conditions might have changed so that service might have been had on the defendant in this state, or in some other way, so that the affidavit could not have been truthfully made at the time of filing. It is clear that the law must permit some inter-

val to elapse between the making and the filing of the affidavit, because, strictly speaking, the two acts could not be simultaneous. That being true, the only question that can arise is what length of time it will permit to elapse between the two acts. The statute is silent on the subject; hence the inference is warranted that it will permit a reasonable time. Just what will be regarded as a reasonable time this court has not decided. However, in *Armstrong v. Middlestadt,* 22 Nebr., 711, it was held that an affidavit made one day before the petition was filed was sufficient. But in that case the court expressly disclaims any intention to go beyond the facts, and, of holding that an affidavit made several days before the commencement of the action would be sufficient. In our opinion, when the petition is filed within such time after making the affidavit that no presumption could fairly arise that the state of facts had changed in the interval, it is sufficient. *Crombie r. Little,* 47 Minn., 581; *Snell v. Meservy,* 91 Ia., 322. Applying this rule to the affidavits in question, we do not believe that any presumption of a change in the state of facts, during an interval of two days, could fairly arise.

Another objection urged against the affidavits is that they are sworn to upon information and belief. The affidavits contain the positive statements of the affiant which are followed by these words: "All of which I verily believe to be true." We do not believe the objection is well taken. Among other things, the affidavit must show that service can not be had on the defendant in this state. In the very nature of things, upon this point, at least, the affiant, whatever the wording of the affidavit, can never have positive knowledge. That he makes such statement upon information and belief, is a necessary implication. To expressly state that which, in the absence of such statement, would be necessarily implied, affects only the form and not the substance of the affidavit. *Colton v. Rupert,* 60 Mich., 318; *Pratt v. Stevens,* 94 N. Y., 387; *Belmont v. Cornen,* 82 N. Y., 256; *Howe Machine Co. v. Pettibone,* 74 N. Y., 68. In Kansas such an affidavit has been held defective,

but not void. *Harrison v. Beard,* 30 Kan., 532. In our opinion, an affidavit for service by publication, sworn to upon information and belief, is not for that reason void.

A more serious objection to the affidavit is that the matters set forth are insufficient to warrant service by publication, and for that reason the court acquired no jurisdiction by such service. The section of the statute, under which the actions under consideration were brought, hereinbefore set out at length, provides that service must be as in case of non-residents. Section 77 of the Code of Civil Procedure prescribes the manner of making service on non-residents, and, so far as is material for present purposes, is as follows: "Service may be made by publication in either of the following cases: First—In actions brought under the fifty-first, fifty-second and fifty-third sections of this code, where any or all of the defendants reside out of the state. * * * Fourth—In actions which relate to, or the subject of which is, real or personal property in this state where any defendant has or claims a lien or interest, actual or contingent therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, and such defendant is a non-resident of the state." The actions mentioned in sections 51, 52 and 53, referred to in the section just quoted, are actions for the recovery of real property, or of an estate or interest therein, actions for the partition of real property, actions for the sale of real property, under a mortgage lien or other incumbrance or charge, and actions to compel the specific performance of a contract for the sale of real estate. Section 78 of the Code of Civil Procedure relating to the affidavit for service by publication is as follows: "Before service can be made by publication, an affidavit must be filed, that service of a summons cannot be made within this state, on the defendant or defendants to be served by publication, and that the case is one of those mentioned in the preceding section. When such affidavit is filed the party may proceed to make service by publication."

One of the grounds urged against the sufficiency of the

affidavits is that the object of the action is not set forth.
Each affidavit contains the following statement: "This case
is one of those named in section 77, title V, of the Code
of Civil Procedure of the state of Nebraska." In *Majors
v. Edwards,* 36 Nebr., 56, this court held that such a state-
ment of the object was sufficient, although at the same
time it intimated that the better practice would be to set
out the object of the action more fully. But it will be ob-
served that the language above quoted is followed by the
further statement, "and is an action relating to real prop-
erty in said state, in which the defendants have or claim
a lien or interest, actual or contingent, and the relief de-
manded consists, wholly or partially, in excluding the
defendants from any interest therein." Plaintiff contends
that, assuming that the object is sufficiently stated by say-
ing that the action is one of those named in said section
77, the subsequent statement renders the affidavit invalid,
for the reason that the object thereby stated is different
than that sought in the actions, and that such statement
being specific must prevail over the general statement. It
must be kept in mind that an affidavit for service by pub-
lication is not required for the information of the defend-
ant as to the nature and object of the action. The sole
purpose of such an affidavit is to enable the court upon
inspection to determine whether the action is one in which
jurisdiction may be obtained by service by publication;
when it is sufficient for that purpose, it serves the only pur-
pose for which it is intended. The affidavits under consid-
eration, fairly construed, mean that the actions, wherein
they were respectively filed, were those named in section 77
of title 5 of the Code of Civil Procedure, and that the re-
lief demanded consisted in part of excluding the defendant
Root from any interest in the lands described. The relief
sought by those actions was the foreclosure of certain tax
liens on the several subdivisions of the land, and the sale
thereof, for the satisfaction of the amount found due. In
the petitions filed in the several cases it is alleged "that
the owner of said land is not known and that the defend-

ant Henry A. Root has, or claims, some interest therein."
The prayer of each, in part, is, for the adjudication that
plaintiff's tax lien is a first lien on the land, and that the
deed issued in pursuance of such proceedings be an abso-
lute bar against each and all of the defendants, and for
such other and further relief as may be deemed equitable
in the premises. In our opinion, the affidavits were suf-
ficient to advise the court of the nature of the actions, and
that the actions were of such a character that it could ac-
quire jurisdiction by service by publication. It follows,
therefore, that the affidavits were sufficient for all pur-
poses, especially when assailed in a collateral proceeding.

It is argued, in support of plaintiff's second proposition,
that at the time of the commencement of the actions to
foreclose the tax liens, Algernon S. Patrick, plaintiff in
the attachment proceedings in the United States circuit
court, by virtue of such proceedings had a lien on the land
in controversy and was therefore an owner within the
sections of the revenue law, hereinbefore quoted; that his
lien was a matter of record in Knox county, and that,
therefore, the plaintiff in such foreclosure proceedings
had the means of knowledge of such lien; that means of
knowledge, being equivalent to knowledge, the owner of
the land was not unknown to the plaintiff in the actions
to foreclose the tax liens, and that as the proceeding
against the land was purely statutory, and authorized
only in case the owner is unknown, the several decrees are
not binding on Patrick, nor those claiming under the title
acquired in the attachment proceedings. The validity of
the argument stated depends on the meaning to be given
to the word "owner." Its meaning varies according to the
context. In proceedings in the exercise of the delegated
right of eminent domain by a railroad company, the word
has been held to include any person having any interest
in land. *Gerrard v. Omaha, N. & B. H. R. Co.,* 14 Nebr.,
270; *Dodge v. Omaha & S. W. R. Co.,* 20 Nebr., 276. In
those cases the meaning given to the word by this court
would include an attaching creditor; but it is clear from

a comparison of the statutes regulating the exercise of the delegated right of eminent domain by a railroad company, and the revenue act, that the legislature intended to give the word "owner" a wider meaning in the former than in the latter. In the revenue act the word is frequently employed, and always, in the sense of absolute owner. For example, it provides that real estate becoming taxable for the first time shall be listed to the "owner" thereof; that the "owner" of the property, on the first day of April in any year, shall be liable for the taxes of that year; that the purchaser of property on the first day of April shall be construed the owner on that day; that land, comprising more than one subdivision, belonging to one owner, may, at his request, be listed as one tract. Compiled Statutes, ch. 77, art. 1, secs. 43-45. These, and many other provisions of the revenue act, clearly indicate that the legislature used the word "owner" in the popular sense, the sense in which it is understood by the people at large; and having employed it in that sense in the other parts of the act, the inference is warranted that they used it in the same sense in the sections providing for the foreclosure of tax liens. *Tracy v. Reed,* 38 Fed. Rep., 69. At first sight, it may seem anomalous that a person should be concluded by a proceeding to which he was not a party and of which he had no notice. But it must be kept in mind that the procedure providing for the foreclosure of a tax lien is a part of the revenue system of the state, and that the necessities of a government will not always permit an overscrupulous regard for private rights. In many states the land is sold and the title of all parties interested divested without any judicial investigation whatever, but by the purely ministerial acts of the county treasurer. Relatively speaking, our procedure for the collection of taxes, including the procedure under consideration, even when construed broadly as the language will permit, is eminently calculated to conserve the rights of the owners of property subject to taxation. In our opinion, Patrick was not the owner within the meaning of the statute, and

the proceedings for the foreclosure of the tax lien were in substantial compliance with the statute, and conclusive against the whole world.

The validity of the proceedings for the foreclosure of the tax liens is assailed on still another ground, and that is, they were brought, tried and determined and the land sold in pursuance thereof, while the land was subject to an attachment issued in an action pending in the circuit court of the United States, and for that reason, it is urged, the proceedings were void, and the deed executed by the sheriff to the defendant conveyed no title.  The doctrine of the supreme court of the United States is that when two courts have concurrent jurisdiction, that which first takes cognizance of the cause has the right to retain it to the exclusion of the other; that where property is *in gremio legis,* if it be a court of rightful jurisdiction, no other court can interfere and wrest from it the possession and jurisdiction first obtained; and that a sale, under an order of one court, of property in the custody or possession of another conveys no title.  *Gumbel v. Pitkin,* 124 U. S., 131; *Heidritter v. Oil-Cloth Co.,* 112 U. S., 294; *Freeman v. Howe,* 24 How. [U. S.], 450; *Krippendorf v. Hyde,* 110 U. S., 276; *Covell v. Heyman,* 111 U. S., 176; *Vaughan v. Northup,* 15 Pet. [U. S.], 1; *Williams v. Benedict,* 8 How. [U. S.], 107; *Peale v. Phipps,* 14 How. [U. S.], 367, 372; *Barton v. Barbour,* 104 U. S., 126; *Taylor v. Carryl,* 20 How. [U. S.], 583; *Gay v. Brierfield Coal & Iron Co.,* 94 Ala., 303, 16 L. R. A., 564.  The case last cited contains an exhaustive review of the authorities from which the rule just stated is deducible.  This rule has its foundation, it would appear, not merely in comity, but in necessity; for were it otherwise, the orders of one court might be offset by those of another, and the parties left without any remedy; besides, in their rivalry for possession of property in controversy, a conflict would arise that would not only be embarrassing in the administration of justice, but would be liable to lead to unseemly strife and personal conflicts between the officers of the different

courts. A study of the cases cited shows that in each case the property was in the actual or constructive possession of the court whose jurisdiction was invaded. The decisions are based, in most cases, upon the facts that the subsequent proceedings in another court would interfere with such possession. In none of these cases was the question of the effect of a foreclosure of a mortgage, or other lien on real estate, and the sale thereof in a state court, pending an action between other parties in a federal court, wherein the same property had been levied upon under an order of attachment directly raised, nor was the determination of that question necessary to a decision in any of said cases. Hence, whatever expressions they may contain on that point are dicta.

In the case of *Prugh v. Portsmouth Savings Bank*, 48 Nebr., 414, which was brought to restrain a United States marshal from selling certain lands on an execution issued from the United States circuit court, it was held "that when land has been levied upon, it is as much in custody of the court, and under the control of the process, as when personal property has been seized on execution or in attachment, and the state court was, therefore, without any authority by injunction or otherwise to interfere with the marshal in the execution of the writ." It will be observed that the foregoing is, to some extent at least, dictum. It was not necessary to decide in that case whether the lands levied upon were in the custody of the court; the precise question involved was, whether the state court might, by injunction, restrain the execution of the process of a federal court. With due regard for the learning of the writer of that opinion, we do not believe the dictum in that case should be adopted as a rule in this state. By the levy of the attachment on the real estate the federal court did not obtain possession of the premises; the possession remained unchanged. The effect of the levy was merely to give the attaching creditor a lien on the equity of redemption of the defendant. By the subsequent foreclosure and sale of the premises under the tax lien the state court

having concurrent ·jurisdiction, no contest for the possession between officers of the different courts arises, nor can arise; neither can there be ·any conflict of jurisdiction; neither the parties nor the *res* were the same. The purchaser, under the judgment rendered in the attachment suit, and the purchaser at a foreclosure sale were left to their remedies, for the adjustment of their respective rights. The jurisdiction of the circuit court of the United States, after judgment and a sale of the premises for the satisfaction thereof, was at an end. It was not, like a court of equity, required to place the purchaser in possession, and such purchaser acquired only the interest of the execution defendant.· The proceedings to foreclose the tax liens in the state court in no manner interfered with the federal court or its process, nor with the due and orderly administration of justice. Hence none of the reasons upon which the rule of non-interference between the courts of concurrent jurisdiction is based apply to this case. Where the reasons for a rule cease, the rule should no longer apply.

In *National Foundry & Pipe Works v. Oconto City Water-Supply Co.*, 81 N. W. Rep., 125, the supreme court of Wisconsin held that the commencement of a suit in the federal court, to enforce a mechanic's or material-man's lien on property, does not preclude the foreclosure of a mortgage on the same property in the state court; that where there is no possession, other than constructive, a ·suit on a different cause of action may be commenced in the state court and carried to judgment, and actual possession of the property obtained under it, notwithstanding the pendency of the action in the federal court; citing *Compton v. Jesup*, 68 Fed. Rep., 263. *In re Hall & Stilson Co.*, 73 Fed. Rep., 527, it was held that the rule of comity which forbids the seizure of property subject to the jurisdiction of one court of concurrent jurisdiction applies only where there is actual or constructive possession of the property by the former court; that the levy of an attachment on real estate gives the court whence the process is-

sues neither actual nor constructive possession of the property, but only creates a lien thereon in favor of the attaching creditor. The doctrine stated in these cases meets with our unqualified approval, especially as applied to this case. The opposite doctrine would require the holder of a tax lien, under the circumstances, to apply to the federal court for leave to enforce it. But it will not be claimed that the state, under any circumstances, may be compelled to resort to the federal courts for the collection of its revenues. For it to do so would be inconsistent with its sovereign character. The tax sales in question operated as an assignment of the lien of the state to the purchaser. Good faith, as well as the efficiency of our revenue system, requires that the state afford such purchaser the same facilities for the enforcement of his lien it would command for itself.

In our opinion, therefore, the pendency of the action in the federal court was no obstacle to the prosecution by the holder of the tax lien, of the actions in the state courts for their foreclosure, and the sales made in pursuance of such actions are valid and binding, and the defendant in this case thereby acquired a good title to the land in controversy as against the plaintiff. We therefore recommend that the decree of the district court be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons given in the foregoing opinion the judgment of the district court is reversed and cause remanded, with directions to enter a decree in accordance with this opinion.

REVERSED AND REMANDED.