STATE OF NEBRASKA, APPELLEE, V. MISSOURI PACIFIC RAIL-
WAY COMPANY ET AL., APPELLANTS.

FILED NOVEMBER 22, 1905. No. 14,198.

1. **Taxation:** TAX LIST. The statute requires the county clerk in
making up the tax list "to prepare a complete statement of all
the lands and lots in his county on which the taxes for one or
more years are delinquent," but if this duty is neglected by the
clerk the lien of the taxes is not thereby lost.

2. ———: EMINENT DOMAIN. A railway company in condemning land
for its right of way and depot grounds is not the agent of the
state. The state has no ownership in the lands by virtue of
condemnation proceedings.

3. **Eminent Domain:** NOTICE: LIENS. If a railway company in con-
demnation proceedings for its right of way and depot grounds
fails to make all parties interested in the land parties to the
proceedings or to give them notice of the proceedings so that
their rights may be protected, it takes the land subject to such
liens as are prior to the rights of the parties to the proceedings.

4. ———: OWNERS. Real estate cannot be taken by condemnation
proceedings unless payment therefor to the owners is first made
or secured. All parties having an interest in the land are
"owners" within the meaning of the statute. A lien for taxes
is such an interest in the land.

APPEAL from the district court for Cass county: PAUL
JESSEN, JUDGE. *Affirmed.*

*B. P. Waggener, James W. Orr* and *A. N. Sullivan,* for
appellants.

*C. A. Rawls,* contra.

SEDGWICK, J.

A tax suit was brought for the year 1904 in the district
court for Cass county, in which the Missouri Pacific Rail-
way Company was made defendant, and it was sought to
enforce the collection of taxes upon certain lots upon
which the railway company had acquired a right of way.
The district court upon the trial held that all taxes levied

after the railway company acquired its right of way were void, because the right of way should be assessed by the state board and was not subject to local taxation. The district court also held that the taxes assessed before the right of way was acquired by the railway company were a lien upon the lots and upon the right of way of the railway company. It directed that the fee of the lots should be first offered for sale subject to the easement of the railway company to satisfy this lien, and that, if the fee subject to said easement could be sold for a sufficient amount to satisfy the tax lien, the easement of the railway company should not be disturbed, but, if no bid could be obtained sufficient to satisfy the taxes, then the fee and the easement of the railway company should be offered for sale. The railway company appeals, and complains of so much of the decree as charges its right of way with the lien of these taxes. Some of the lots were obtained by the railway company upon contracts with the owners, who deeded them in fee to the railway company. Others were obtained by condemnation proceedings under the statute. From the view we take of the case this distinction is immaterial.

1. It is suggested in the brief on the part of the railway company that "the first section of the act under which the suit is brought provides that on or before the 15th day of May, each year, it is the duty of the county treasurer to prepare a complete statement of all the lands and lots in his county on which the taxes for one or more years are delinquent, or on which any special assessment of any city in the county is delinquent," and it is stated in the brief that, if this jurisdictional provision had been observed, the suit would not have been brought. We do not understand how this suggestion affects the merits of this case. The revenue law then in force provided that the county clerk, in making up the list for the current year, should enter delinquent taxes also. If these taxes were a lien upon the lots in question, the clerk should of course have entered them as delinquent taxes upon the

list, so that they might be collected as delinquent taxes; but we do not see how his failure to do so would in any manner affect the lien of the taxes, or prevent the clerk in a subsequent year from completing his tax list as the law requires by entering these delinquent taxes thereon.

2. The statute then in force made these taxes a lien upon the real estate, and that lien accrued before the commencement of the condemnation proceedings instituted by the railway company. The statute declared that this lien should continue until the taxes were paid. The law under which the condemnation proceedings were had provided "that no appropriation of private property for the use of any corporation provided for in this subdivision, shall be made until full compensation therefor be first made or secured to the owners thereof." Comp. St. 1903, ch. 16, sec. 81 (Ann. St. 9967). It is contended that the condemnation proceedings were instituted for a public purpose, and that in those proceedings the railway company acted merely as the instrument for the state in appropriating the right of way for public use, and that such proceedings must necessarily result in the destruction of the state's lien for taxes, since it would be inconsistent for the state to proceed to condemn its lien for taxes. It is said in the brief: "When these lots were taken by the state, the state had a lien on the lots for any tax that had become delinquent." This argument is not satisfactory to our minds. The state did not take this land. The lands and the right of way after the taking were private property the same as before. The state had no ownership therein by virtue of the condemnation. These lands are subject to taxes after the condemnation, as well as before. The state does not levy taxes upon its own land, nor does it allow any tax to be levied thereon in its name. The language used in *Tinsman v. Belvidere D. R. Co.*, 26 N. J. Law, 148, 69 Am. Dec. 565, which was a somewhat similar case, is, we think, entirely applicable here. The court said:

"This work was not done by the state nor by the agents

of the state, nor is the profit resulting from it to inure to the treasury of the state. It was done by a private corporation, acting in their own behalf, for their own benefit, and for the interest of the individual stockholders. True, they were invested with such portion of the sovereign power as enabled them to construct the road. They were authorized, in virtue of the right of eminent domain, to take private property, so far as was essential to the completion of a work of public improvement, and thus far we provide strictly for remuneration."

And, also, in *Burlington & M. R. R. Co. v. Spearman*, 12 Ia. 117, it was said:

"The property of a railroad company is not exempt from taxation in this state. The road of complainant is not the 'work of the state.' The roadbed and depot grounds are not 'held as an easement of the public, by the company as the agents of the state,' as claimed by the appellant. The plaintiff, on the contrary, is a private corporation; the stock is the private property of the stockholders, who, as such, own all the corporate property."

There is therefore no inconsistency in bestowing the power of eminent domain upon railway companies without at the same time giving to the railway company the power to annul, without payment, all tax liens upon the property it may desire to so take. At the time these condemnation proceedings were instituted the statute gave to the railway company the right to construct its road over the lands owned by the state, without compensation to the state, and it was held in *Chicago, B. & Q. R. Co. v. Englehart*, 57 Neb. 444, that a railway company which had constructed its road over the saline lands of the state, relying upon this statute, could not be evicted from the land either by the state or its subsequent grantee. A doubt was expressed whether the legislature could donate the land to the railway company for right of way, without compensation. It was suggested that possibly the state might afterwards recover from the railway company the value of the land. The railway company cannot avail itself of this

provision of the statute in this case. The legislature has no power to release lands from tax liens. Section 4, article IX of the constitution, forbids it. The constitutional provision would prevent granting such right of eminent domain as would operate to cancel the tax lien existing against the land taken under such right. If it cannot release land from taxes, it cannot grant power to private corporations, which in its exercise would necessarily operate to release the land. It was the duty of the legislature, then, in granting the power of eminent domain, to make provision for applying the proceeds of the land so taken to the payment of tax liens existing thereon. The legislation on the subject should be construed in view of this duty on the part of the legislature.

3. A number of authorities are cited by appellant upon the proposition that special assessments against land included in the right of way and depot grounds of railway companies cannot be enforced; but these authorities can have no application to this case, because the lien which it is sought here to enforce is for a general tax, and not for a special assessment, and because this lien attached to the land before the railway company obtained any interest therein. The language used in such cases must be construed in the light of questions that were being discussed, and a very different question is presented when it is sought to enforce a lien which existed against the land when the railway company acquired its title thereto. In *Gray v. Case,* 51 N. J. Eq. 426, 26 Atl. 805, the state had loaned from its sinking fund $6,000 upon a tract of land, and had taken a mortgage thereon to secure the loan. Afterwards the railway company acquired a right of way over this land by condemnation proceedings, but did not notify the state of the proceedings, and, because no notice of the condemnation proceedings was given to the state nor to the commissioners of the sinking fund, it was held that the lien of a subsequent assignee of the mortgage was prior to the rights of the railway company, and that the railway company was liable to the holder of this mortgage

for the full amount of the award in the condemnation proceedings, although it had paid the amount of the award to the holder of the fee title of the land. The fact that the state was the holder of the lien at the time of the condemnation proceedings, and that the proceedings were authorized by the state, did not affect the liability of the railway company. In discussing this question the court said:

"But the company failing to give the requisite notice, it still had the right to have equitable distribution of the award amongst those interested. For this purpose it was entitled to the aid of the court. *Platt v. Bright,* 2 Stew. Eq. 128, s. c. 4 Stew. Eq. 81. This, too, was neglected by the company. Parties who fail to avail themselves of the rights and safeguards which the law offers them cannot complain when such failure results in their disadvantage."

4. The property of an individual cannot be taken for the use of a railway company by condemnation proceedings without payment therefor. Under our statute the payment must be made to the owner of the land, and the doctrine is well settled that all persons who have an interest in the land are owners within the meaning of this statute. In *Omaha B. & T. R. Co. v. Reed,* 3 Neb. (Unof.) 793, it was contended that a mortgagee was not an owner of the land within the meaning of this statute, but the court said:

"A large number of cases are cited from other states in support of this position. The answer to this is, simply, that there are various statutes in various states, and various decisions of the courts construing them, but that our statute has been construed by this court in *Gerrard v. Omaha, N. & B. H. R. Co.,* 14 Neb. 270, to include all persons who have an interest in the estate, and in *Dodge v. Omaha & S. W. R. Co.,* 20 Neb. 276, it has been expressly decided that the mortgagee is an owner within the meaning of this statute."

In the *Gerrard* case cited in the above quotation it was

held that the owner of a tax lien on the lands was a proper party to the proceedings. In this case the court used the following language:

"It is therefore its duty to bring in all parties having an interest in the estate in order that the condemnation money may be properly applied. The word 'owner' as used in the statute applies to all persons who have an interest in the estate. Where it is necessary the court possesses ample power to require such parties to interplead, and to apportion the money according to their rights." See also *Dodge v. Omaha & S. W. R. Co.,* 20 Neb. 276; *Leigh v. Green,* 62 Neb. 344.

We are satisfied with the construction placed upon the statute by the foregoing decisions. The rule thus established does not put any hardship upon the railway company. The lien of these taxes was a matter of record. It could have been easily ascertained, and could have easily been provided for. Several cases have been brought to our attention in which the courts of other states have held that, upon the suggestion of the railway company, the court would require taxes then existing upon the land to be paid out of the condemnation money while the same was in the hands of the court. *Philadelphia & R. R. Co. v. Pennsylvania S. V. R. Co.,* 151 Pa. 569, 25 Atl. 177. However this may be, there can be no doubt that under our statute the railway company might protect itself by making lien-holders parties to the proceedings, and if it neglects to do this, and allows the holder of the fee to obtain the entire award, it cannot afterwards insist that the lien-holders shall by such proceeding be deprived of their interest in the property. It follows that the judgment of the district court is right, and it is therefore

AFFIRMED.