## AS TO PAYMENT OF ACCRUED TAXES ON PROPERTY APPROPRIATED BY A MUNICIPALITY.

Court of Appeals for Hamilton County.

CITY OF CINCINNATI AND WILLIAM A. HOPKINS, TREASURER, V. FRANCES D. JONES AND FRANK J. JONES, HER HUSBAND.*

Decided, March 29, 1915.

*Appropriation—Proceedings by a Municipality for the Acquiring of Land—Title Passes, When—Taxes Which Have Become a Lien May be Deducted from the Compensation Awarded.*

1. In an appropriation of property by a municipality title does not pass until full compensation has been paid or secured to be paid.
2. A lien for taxes is not divested by condemnation proceedings, and taxes which have become a lien on the property appropriated on the date the title passes may be deducted from the compensation awarded.
3. A county treasurer is a mere ministerial officer charged with the duty of receiving taxes, and is in no way a necessary party to an appropriation proceeding.

*Walter M. Schoenle,* City Solicitor, and *John V. Campbell,* Prosecuting Attorney, for plaintiff in error.

*DeCamp & Sutphin,* contra.

GORMAN, J.

This is a proceeding to reverse a judgment of the Court of Insolvency of Hamilton County.

On December 11, 1911, the council of the city of Cincinnati duly passed a resolution declaring its intention to appropriate certain real estate of the defendants in error on Burnet avenue in said city, to public use for hospital purposes, and thereafter the said council passed the necessary ordinance directing the appropriation of said property to proceed. Thereafter, an application was filed in the Insolvency Court of Hamilton County, on January

*Motion for an order directing the Court of Appeals for Hamilton County to certify its record in this case, overruled by the Supreme Court, July 2, 1915.

27, 1912, to assess the compensation for said property, and such proceedings were thereafter had that on June 10, 1912, the jury returned a verdict assessing the value of the property of defendant appropriated at $28,200. On this verdict a judgment was duly entered September 28, 1912, finding the proceedings regular and according to law and that the defendants, Frances D. Jones and Frank J. Jones, were the owners of said real estate and the several interests therein, subject to such claims of the auditor and treasurer of Hamilton county, for taxes   *   *   *   as may be finally adjudged payable out of the compensation adjudged therefor; the verdict was confirmed, and the city of Cincinnati was ordered to pay the clerk of the court, or to said defendants or their attorney the amount of the compensation assessed for the use of said Frances D. Jones and Frank J. Jones, and to the treasurer of Hamilton county and the auditor of Cincinnati the taxes which were unpaid and a lien on the property; and that upon payment as aforesaid the city of Cincinnati shall be entitled to all the interest and estate in and to the possession of said lots and lands, and that an order issue to the sheriff to put the city of Cincinnati in possession of said property and said interests. The city was adjudged to pay the costs. Thereupon, on the same day, September 28, 1912, the city paid to Frances D. Jones and Frank J. Jones $27,700 of the compensation money, and $500 it paid to the clerk of the court to await the order of the court as to the payment of the taxes on the property for the year 1912. On final hearing on the question of the payment of the taxes for the year 1912, the court of insolvency held that no part thereof should be paid out of the compensation money awarded for the property, and that on distribution the treasurer of Hamilton county was not entitled to receive any sum on account of the taxes on said property for the year 1912 and which amounted to $357.50, but that the entire compensation awarded by the jury and the court should be paid to the defendants in error.

To this judgment on distribution the city of Cincinnati and the treasurer of Hamilton county excepted, and have brought the case into this court claiming that said judgment or order of distribution was erroneous, and that the court should have or-

dered said taxes for the year 1912 paid out of the sum awarded for the property.

The right of the municipality to take or appropriate private property for public purposes is derived from the provisions of the Ohio Constitution, Section 19, Article I, Bill of Rights, which among other things provides that for private property taken for public use, when not taken in time of war or other public exigency imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, etc., a compensation shall first be made in money or secured by a deposit in money.

The case under consideration, therefore, required compensation to be either paid or secured in money before the property could be taken or appropriated.

The legislation authorizing council to proceed to appropriate the property is found in Sections 3677 to 3697 inclusive, of the General Code. The property was not appropriated by the adoption of the resolution declaring the intention to appropriate, nor by the adoption of the ordinance directing the appropriation to proceed. A reference to Sections 3679 and 3680, General Code, discloses that council is thereunder authorized to declare the *intent* to appropriate and not to appropriate; and the ordinance to be passed is one directing the appropriation to proceed.

We are of the opinion that no appropriation can be made or fully completed, such as the one made in the case at bar, until there has been full compensation paid or secured to be paid for the property. In this case the appropriation was not completed until September 28, 1912, when the money was paid over by the city. Up to that date the title to the property vested in the defendants in error, and did not pass to the city or vest in it until September 12, 1912. Section 3691, General Code; *Wagner* v. *Railway Co.*, 38 O. S., 32, 36; *Garvin* v. *Columbus*, 5 N. P., 236.

This conclusion would appear to be unquestioned, if we consider that by the provisions of Section 3697, General Code, the municipality has six months within which to decide whether or not it will take the property at the valuation fixed by the jury.

If it fails to pay the assessed value or to take possession of the property within six months from the date of the assessment of the value, its right to make the appropriation on the terms of the assessment shall cease, and the judgment and order of the court shall cease to be of any effect, except as to costs, which must be paid by the municipality whether it takes the property or not. The defendants then, being the owners of the property and having the title thereto up to September 28, 1912, were they liable for the taxes for the year 1912, and were these taxes a lien on this property on that date when the city became vested with the title thereto?

Under Section 5671, General Code, the lien of the state for taxes levied for all purposes, in each year, shall attach to all real property subject to taxation on the day preceding the second Monday of April, annually.

If this property on the day preceding the second Monday of April, 1912, was the private property of the defendants in error, as we have found that it was, then there appears nothing in the record to indicate that it was not subject to taxation. It was not exempted from the payment of taxes. But did the lien attach on that date for county, city and school taxes, as well as for taxes purely for state purposes? We think the question must be answered in the affirmative, under the decision of the Supreme Court in *State, ex rel Donahey, Auditor,* v. *Roose, Auditor,* 90 O. S., 345. On page 351 the court says:

"It is further insisted on behalf of respondent that by reason of Section 5671, General Code, this tax can not be legally levied for the year 1913 because that section provides that 'The lien of the state for taxes levied for all purposes in each year shall attach to all real property subject to such taxes, on the day preceding the second Monday of April, annually.' This same objection would apply with equal force to all taxes levied for state and local purposes and made after the date preceding the second Monday of April each year. The fact is that practically all levies, especially those for local purposes, are made after this date. Section 5627, General Code, directs the county commissioners at their March or June session to determine the amount to be raised by taxes. Section 5646, General Code, directs the township trustees to determine on or before the 15th

day of May annually the amount of taxes necessary for all township purposes, and Section 5649-3a, General Code, directs that on or before the first Monday in June of each year the county commissioners of each county, the council of each municipality, the trustees of each township, each board of education and all other boards or officers authorized to levy taxes within a county, except for state purposes, shall submit or cause to be submitted to the county auditor an annual budget; and under the provisions of Section 5649-3b, as amended February 16, 1914, the budget commissioners are not required to complete their work until the third Monday of August. While Section 5671, General Code, fixes the date in each year that the lien of the state for taxes shall attach, yet it by no means follows that this requires that the tax levy shall be made on or before that date. In fact, all the legislation upon that subject is in direct conflict with such a construction. On the contrary it is clear that the amount of such taxes is to be subsequently determined and such assessment then relates back to the date at which the taxes became a lien. This question is fully discussed and the correct conclusion reached in the case of *Loomis, Trustee, v. Von Puhl et al*, 2 N.P. (N.S.), 423.''

The decision referred to by the Supreme Court and approved by it was rendered by Judge Hollister when on the common pleas bench of this county, and an examination of the decision will disclose that it does fully discuss the question under consideration and the conclusion reached is in accord with the opinion of the Supreme Court in the above entitled case.

But it is claimed by counsel for the defendants in error that the rule applicable to judicial sales is the proper rule to apply in condemnation proceedings in making an order as to the payment of taxes, and the cases of *Haglen* v. *Cohen*, 30 O. S., 436; *Markley* v. *Whitmore*, 61 O. S., 587, are cited in support of their contention. These decisions were rendered under a construction of Section 5692, General Code, which provides that when land, held by tenants in common, is sold upon proceedings in partition, or real estate is sold at judicial sale, or by administrators, executors, guardians or trustees, the court shall order the taxes and penalties and the interest thereon against such lands, to be discharged out of the proceeds of such sale.

Now it will be observed that condemnation proceedings do not come under the provisions of this section, and we do not feel that we would be warranted in extending the provisions of this section to condemnation proceedings. Such proceedings are purely statutory, and it can not be said that appropriation proceedings involve the judicial sale of lands. There is no sale by order of court in condemnation proceedings and it would amount to judicial legislation to hold that by analogy the provisions for the payment of taxes in cases of judicial sales should be applied to proceedings to appropriate lands for public uses. Therefore, we are of the opinion that the rules laid own in these cases cited by counsel for defendants in error do not apply.

As to the point that the county treasurer was not made a party to the proceedings until after the money was paid over, we are of the opinion that it was not necessary that the county treasurer should have been made a party at any stage of the proceedings. He was simply the ministerial agent of the state to receive the taxes, and it was the duty of the court to see that the state taxes were paid out of the proceeds on distribution, and the lien for taxes is not divested by condemnation proceedings. *Lewis on Eminent Domain*, 3d Ed., Section 524; *State* v. *Mo. Pac. Ry. Co.*, 75 Neb., 4; *State, ex rel Trust Co.*, v. *Godfrey, Aud.*, 20 C. C., 649.

The city of Cincinnati was entitled to have the property appropriated clear and free of all encumbrances including the lien for taxes which had attached when it took possession of the property. It was entitled to have what it bargained for under its proceedings to appropriate—an absolute fee simple title, clear and free of liens and encumbrances. *In re Sleeper,* 62 N. J. L., 67.

If it were required to pay the taxes in addition to the condemnation money, then it would be paying for the property more than the amount awarded to the owners by the verdict of the jury. The property could not be placed on the exempted list when the city acquired it on September 28, 1912, until it had first satisfied the then existing lien for the taxes for the year 1912.

We are therefore of the opinion that the court of insolvency erred in not ordering the taxes for the year 1912 to be paid out of the funds in the hands of the clerk held to determine the question of the payment of the taxes; and for such error the judgment is reversed and the judgment which that court should have rendered will be entered in this court.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.