[Civil No. 2729. Filed October 2, 1928.]

[270 Pac. 625.]

MRS. JOHN H. PORTER, Appellant, v. B. Y. DUKE, Appellee.

Mr. W. E. Ferguson, for Appellant.

Mr. Isaac Barth, and Mr. Dodd L. Greer, for Appellee.

LOCKWOOD, J. — On the twenty-fourth day of March, 1927, B. Y. Duke, hereinafter called plaintiff, filed his complaint in the superior court of Apache county, against Mrs. John H. Porter, hereinafter called defendant, for damages alleged to have been received by plaintiff through the negligent driving of an automobile owned by defendant. A writ of attachment was sued out on the same day, but was never served, and was quashed on motion of plaintiff on the first day of April. On the thirty-first day of March plaintiff filed an amended complaint, in which the name of defendant was set forth as "Helen Porter, otherwise known as Mrs. John Porter." A writ of attachment was taken out April 1st, the statutory affidavit in support thereof being made by Dodd L. Greer as attorney for plaintiff, and delivered to the sheriff for service. By virtue of said writ, the sheriff on the same day executed it by taking into his possession property described in his return as "one Packard touring car, Colorado license number 27, together with all its accessories, . . . and belonging to the defendant Louise C. Porter, otherwise known as Mrs. John Porter."

On the same day attorneys for plaintiff moved for leave to amend the complaint, affidavit, and writ of attachment by striking out the name of "Helen Porter" wherever it appeared, and writing in place thereof the name "Louise C. Porter," which motion was by the court granted as of that date. On the 5th of April, Dodd L. Greer, as attorney for plaintiff, moved for an order authorizing service by publication upon the defendant, Louise C. Porter, otherwise known as Mrs. John H. Porter. This motion was

supported by an affidavit of Dodd L. Greer as attorney for plaintiff to the effect that, "to affiant's best information and belief, the defendant Louise C. Porter, otherwise known as Mrs. John H. Porter, is a nonresident of the state of Arizona, and that her last known address was Coronado Hotel, San Diego, California," and an order for service by publication was duly made, and the summons published as provided by the statute. Defendant then filed a petition for removal of the cause to the federal court, to which petition plaintiff demurred, and the demurrer was sustained and the petition for removal was denied.

Defendant failed to answer the complaint within the time required by statute, and on the eleventh day of June a default was entered. On the same day the sheriff made a return on the writ of attachment showing the attachment was made as above set forth on the first day of April. The court then proceeded to hear evidence on the merits and rendered judgment against defendant in the sum of $4,000, according to the prayer of the complaint, and ordered a foreclosure of the attachment on the property attached. Defendant has appealed from the judgment, and set up in support of her appeal seven assignments of error, all of which go to the jurisdiction of the court and not to the merits of the case. We will discuss these assignments as seems advisable.

The first is that the court erred in making an order of publication of summons against Louise C. Porter, sometimes known as Mrs. John H. Porter, when the action had been prosecuted previously to the order for publication against Mrs. John H. Porter, sometimes known as Helen Porter. It appears from the abstract of record that before the order for publication was made and summons issued thereon, by leave of the court the complaint then on file, together with the affidavit and writ of attachment theretofore issued, had been amended by substituting the name of

"Louise C. Porter" for that of "Helen Porter."
Paragraph 426, Revised Statutes of Arizona of 1913,
Civil Code, reads as follows:

"426.   When the plaintiff is ignorant of the name
of a defendant, such defendant may be designated
in any pleading or proceeding by any name; and when
his true name is discovered, the pleading or proceed-
ing may be amended accordingly."

Plaintiff therefore had the right to amend the
pleadings as he did.   Nor do we think it necessary
that either the petition for the change in name or the
order of the court thereon needed to show the reason
for the amendment.   It will be presumed that the
statutory reason existed in the absence of evidence to
the contrary.

The second assignment of error is that the court
erred in making the order for publication of summons
when at that time no return of the sheriff on the writ
of attachment was before it.   The theory of the de-
fendant is that the court has no jurisdiction to order
a publication of summons in a case of this nature
until after the attachment is made, and that the
sheriff's return on the writ is the only evidence which
the court can consider in determining whether or not
an attachment does exist; that since the return of the
sheriff was not made until June 11th, the court on
April 5th, when the order for publication of summons
was made, could have no legal knowledge as to the
attachment, and therefore had nothing upon which to
base its order.   As we shall show hereafter, an attach-
ment made any time before judgment confers juris-
diction, but even assuming that the court could not
order publication of summons until after the attach-
ment had been made, the jurisdiction depended on the
*fact* of the attachment, and not upon the *proof*
thereof.   Whenever the date of the attachment be-
comes a question in issue, it may be true that the
officer's return is the only method of proving the date,

but that return, when it is offered in evidence, establishes the jurisdiction as of the date it is shown the attachment was made, and not as of the date the return was made by the sheriff. It was not necessary to prove the jurisdiction until the case was before the court for determination, and at that time the return of the sheriff was on file and showed that the attachment was made before the order for the publication of summons.

The third assignment is that the affidavit for attachment was insufficient. It is claimed that the affidavit does not show the amount of damages claimed in the action, nor why it was made by plaintiff's attorney instead of by plaintiff in person. Attachment is a statutory proceeding, and is governed by the provisions of the statute. The party suing out a writ of attachment may not do less than the statute requires, but need not do more. Paragraph 1393, Revised Statutes of Arizona of 1913, Civil Code, reads in part as follows:

"1393. The plaintiff at the time of filing his complaint, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant give security to pay such judgment, as in this chapter provided, in the following cases: . . .

"(2) When any suit be pending for damages, and the defendant is about to dispose of or remove his property beyond the jurisdiction of the court in which the action is pending for the purpose of defeating the collection of the judgment."

Paragraph 1394, so far as it applies to the present action, reads as follows:

"1394. The clerk of the court or justice of the peace must issue the writ of attachment upon receiving an affidavit by or on behalf of the plaintiff, showing: . . .

"(4) That an action is pending between the parties, and that the defendant is about to remove his property beyond the jurisdiction of the court to avoid payment of the judgment; and,

"(5) That the attachment is not sought for a wrongful or malicious purpose, and that the action is not prosecuted to hinder or delay any creditor of the defendant."

It appears from these paragraphs that an attachment may issue when a suit is pending for damages and the defendant is about to remove his property from the jurisdiction of the court for the purpose of defeating the judgment, and that the statute only requires the affidavit to show these facts, and that it may be made either by the party or on his behalf. There is no requirement of a showing as to why some other person than the party makes the affidavit. If it need not be made by plaintiff in person, his attorney is obviously a proper person to make it. The affidavit was sufficient in form and made by a person authorized under the statute to make it. This covers also the fifth assignment of error.

The fourth assignment is that the court erred in issuing its order for publication of summons without a sufficient affidavit in support of the motion. The objection is that the affidavit was made on information and belief, and not as a positive fact, and it is urged that this is insufficient under the statute. Paragraph 447, Revised Statutes of Arizona of 1913, Civil Code, provides as follows:

"When any party to the suit, his agent or attorney, shall make affidavit at the time of instituting the suit or at any time during its progress that the defendant is a nonresident of the state, . . . " the summons may be served by publication.

The weight of authority is to the effect that an affidavit for publication based on information and belief, which does not state the source of the information, is insufficient. *Turnage* v. *Fisk*, 22 Ark. 286;

*Vanpelt* v. *Hutchinson,* 114 Ill. 435, 2 N. E. 491; *Feikert* v. *Wilson,* 38 Minn. 341, 37 N. W. 585; *Hafern* v. *Davis,* 10 Wis. 501. There is, however, respectable and well-reasoned authority to the contrary. *Leigh* v. *Green,* 62 Neb. 344, 89 Am. St. Rep. 751, 86 N. W. 1093; *Colton* v. *Rupert,* 60 Mich. 318, 27 N. W. 520; *Koch* v. *District Court,* 150 Iowa 151, 129 N. W. 740. It is not necessary, however, that we determine the question in this particular case. The amended complaint filed the 31st of March states specifically:

"That the defendant, Helen Porter, otherwise known as Mrs. John H. Porter, is a resident of the city of Denver, state of Colorado."

And the name was amended before the summons issued. This complaint was verified by plaintiff, and the jurat states:

"That the same is true of his own knowledge, except as to those matters stated upon his information and belief."

On the 5th of April plaintiff's attorney filed his affidavit based on information and belief to the effect that defendant was a nonresident of the state of Arizona. The court in its order for service by publication, however, stated:

"It appearing to the satisfaction of the court from the affidavit filed herein, and from the pleadings and files in said cause, that the defendant, Porter, is a nonresident of the state of Arizona."

—and made the order upon such facts.

Regardless of the sufficiency of the affidavit made by plaintiff's attorney, the verified complaint was a positive and unequivocal statement under oath of the defendant's nonresidence and was amply sufficient to comply with the strict language of the statute.

The sixth assignment is that the court had no jurisdiction over the person of defendant or the property sought to be subjected to the action *in rem.* This

assignment raises the most important question in the case. No personal service was ever had upon defendant, nor did she appear in such manner as to give the court jurisdiction to render a personal judgment against her. The judgment, therefore, can be sustained only as one *in rem,* if at all. The rule governing in cases of this kind was laid down in the case of *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565, and has been followed consistently by the state and federal courts ever since. That case, after holding that substituted service gave a court no jurisdiction to render a personal judgment against defendant, held as follows:

"Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. . . .

"Except in cases affecting the personal status of the plaintiff, and cases in which that mode of service may be considered to have been assented to in advance, as hereinafter mentioned, the substituted service of process by publication, allowed by the law of Oregon and by similar laws in other states, where actions are brought against nonresidents, is effectual only where, in connection with process against the person for commencing the action, property in the state is brought under the control of the court, and subjected to its disposition by process adapted to that purpose, or where the judgment is sought as a means of reaching such property or effecting some interest therein; in other words, where the action is in the nature of a proceeding *in rem.*"

The question, then, is as to what is necessary to bring property "under the control of the court" so as to make a judgment rendered on substituted service valid as against such property. It is universally held that this must be done by some kind of seizure or similar act under the order of the court, actual or constructive, before the judgment is rendered; but the

question arises at what stage of the action it is necessary that this seizure be made. There are two theories, both supported by authority. One is that, since the judgment is essentially *in rem,* the seizure must be made before process is issued for the substituted service. The other is that seizure at any time before the rendition of judgment is sufficient to confer jurisdiction. There is not a wealth of authority upon this precise point, but cases may be found supporting both theories. The first is well exemplified by *Little* v. *Christie,* 69 S. C. 57, 48 S. E. 89. The reasons for the second are well set forth in *Hartzell* v. *Vigen et al.,* 6 N. D. 117, 66 Am. St. Rep. 589, 35 L. R. A. 451, 69 N. W. 203. The court therein said, referring to *Pennoyer* v. *Neff, supra:*

"These principles, there announced, and which are now universally accepted as sound, rest upon the broad grounds that every sovereign state possesses exclusive jurisdiction over persons and property within its territory, and may properly determine for itself the status and capacity of its inhabitants, and may prescribe all rules for the acquirement and transfer of property, and for the execution and enforcement of contracts, within such territory; but that the writs and processes of a state court can have no extraterritorial force or binding effect. They cannot reach beyond the territorial lines of the state where issued, and directly affect persons or property in another state. It being certain, then, that no valid judgment *in personam* could be rendered in the case, it followed that no valid judgment whatever could be rendered, unless it was in the nature of a judgment *in rem.* But, to authorize a judgment *in rem,* some process of the court must have been served upon the *res,* and it must have been brought within the direct control of the court, so that the judgment could direct its final disposition. The court declares that a judgment cannot occupy the uncertain position of being valid in case property of the defendant is subsequently seized in the state, or, failing in that, forever remain invalid, and that a judgment, if void when rendered, will forever remain void. This unanswer-

able argument leads inevitably to the conclusion that, in all actions against nonresident nonappearing defendants, served by publication only, property of the defendant must be seized before any valid judgment can be rendered. As said by the court in that case, the jurisdiction to investigate the controversy depends upon jurisdiction over property. There is no jurisdiction *in personam*, and unless there is jurisdiction *in rem*, the action must go down. The learned counsel admit that it is only by inference that *Pennoyer* v. *Neff*, can assist respondents in this case. But it is argued that, by the commencement of an action against an avowed nonresident, no personal judgment is expected, and that, while the action is begun *in personam*, it is necessary for the plaintiff to at once proceed as in an action *in rem;* and admiralty works are cited to show that, in actions strictly *in rem*, the first step is to seize the property to be affected. But this was not an action *in rem*. It was begun as an action *in personam*, and no one could say that it would be anything but an action *in personam* until there had been completed service, and the time for answering had expired. The law could not compel defendant to come in and defend, but it had extended to him every opportunity to do so that it could, and no one was warranted in saying that he would not do so until, by his failure, he so declared. As said in *Cooper* v. *Reynolds*, 10 Wall. 308 (19 L. Ed. 931), and quoted with approval in *Pennoyer* v. *Neff*: 'But if there is no appearance of defendant, and no service of process upon him, the case becomes, in its essential nature, a proceeding *in rem*.' But what obligation rested upon plaintiff to invoke the jurisdiction *in rem* until it was certain that jurisdiction *in personam* would not be acquired? True, when that time arrives, he must invoke the jurisdiction *in rem*, or suffer his action to fail. But we perceive no reason why he should sooner do so.

"But, lastly, upon this point, it is urged—and there is reasoning *arguendo* in *Pennoyer* v. *Neff*, that suggests this line of argument—that the law assumes that property is in the possession of the owner, either *in personam* or by agent, and that, hence, he will have actual notice of its seizure, and can rush to its defense; but that a statute that requires only that prop-

erty should be seized before judgment would be satisfied with a seizure one hour before judgment, and thus property would be taken without giving the owner any opportunity to be heard, or, in other words, 'without due process of law.' We think this reasoning places undue stress upon the fact of seizure, and loses sight of the effect of substituted service. Such service the law authorizes and recognizes. It will sustain no personal judgment—can serve as the basis of no personal liability; but for all other purposes it is effective. The law is careful to conserve the rights of nonresident defendants. It provides that notice shall be published for a specified time, usually six weeks, and in the newspaper in the proper jurisdiction most likely to give defendant notice. It requires a copy of the summons and complaint to be sent to him when his address is known. All this is not mere idle form. It serves a substantial purpose. It is the theory of the law that notice of the pendency of the action is thus brought to the defendant, and only by the grace of permissive statutes is he permitted to deny it. And, when notice is thus received, he may be justified in disregarding it, so far as incurring any personal liability is concerned; but he is not justified in treating it as an entirely unwarranted assumption of power by a foreign court. He is bound to know the law, and he is bound to know that, if he have property, in the jurisdiction, it can and will be seized in the action, unless he appears and incurs the liability of a personal judgment. It is, in effect, a modified form of the old writ of *distringas*. A nonresident defendant, so served, is not compelled to appear; but he refuses at the risk of having his property seized and appropriated, not for the benefit of the state, as in the old writ, but for the benefit of the plaintiff. The writ of attachment, when used against a nonresident, is not necessarily or ordinarily used for the same purpose that it serves in case of a resident defendant personally served. There its object is to secure an insecure or jeopardized claim. But it may be that a personal judgment against the nonresident would be perfectly good, and all that plaintiff could desire. He uses the attachment to force the nonresident defendant either to submit to the chances of a personal judgment or

suffer his property to be appropriated. It is the substituted service that gives notice of the pendency of the action, and that notice is a direct challenge to the defendant to appear and protect his property, if any he have in the jurisdiction. He has ample time. There is no legal hardship.''

We think the reasoning of this case is sound, and therefore hold that, where service by publication or other method of substitution for personal service within the state is made, it is sufficient, in order to support a judgment *in rem* against specified property, that the property be taken into the possession of the court at any time before the judgment is rendered.

What we have just said disposes also of the other assignments of error made by the defendant. It appearing that the court had full jurisdiction to render the judgment herein, it is affirmed.

ROSS, C. J., and McALISTER, J., concur.