Phila. & Reading R. R. *v.* Penna. Schuylkill Valley R. R.,
Appellant.

*Eminent domain—Railroads—Payment of damages into court to protect lien creditors—Equity—Practice.*

Where land bound by liens of judgments and mortgages is condemned by a railroad company, under act of Feb. 19, 1849, and it is not alleged that the property bound by the liens is sufficient for their payment, the damages awarded by the jury may be ordered to be paid into court, under the equity powers of the court, for the protection of all parties interested, upon application of the railroad company alone, without joinder of the lien creditors.

Argued March 3, 1892.   Appeal, No. 315, Jan. T., 1892, by defendant, from decree of C. P. Berks Co., Sept. T., 1890, No. 55, refusing to permit land damages to be paid into court. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Petition to pay land damages into court.

Defendants' petition averred that a verdict had been rendered for plaintiffs for $8,839.78 for land appropriated by defendants; that the land appropriated and for which the damages were allowed, was bound by the liens of certain judgments and mortgages.   The petition prayed for leave to pay the amount of the verdict into court for distribution to the person or persons entitled to the same, and that upon such payment into court it may be directed that the verdict be marked satisfied, etc., and for other relief.

The answer averred: (1) That by the verdict the damages were found to be due to plaintiffs as owners of the property appropriated.   (2) That the proceedings under which defendants acquired possession of the land appropriated and by which the damages were assessed were of an adverse character, and payment to the plaintiffs would be a final disposition of any claim for damages and full protection from any future liability to lien creditors.   (3) That no lien creditors have appeared and become parties to proceedings asking for payment to them instead of to the plaintiffs.   (4) That the payment into court is an unnecessary precaution and unwarranted by law, and will tie up the money and subject the plaintiffs to serious loss

and damage, for which there is no justification in law. (5) That the amount of the verdict is but a very small fraction of the value of plaintiffs' property and of the liens against it.

The court refused the application and dismissed the petition in an opinion by ERMENTROUT, P. J.:

" The right of the defendant to pay the amount of the verdict into court is not established by or predicated upon any act of assembly. In general practice, in assumpsit or covenant for the payment of money, when the dispute is not whether anything, but how much is due to the plaintiff, the defendant may have leave to bring into court any sum of money he thinks fit and is willing to admit to be due. Where, however, the action is for a tort or for general unliquidated damages it cannot be allowed. A tender cannot be pleaded and defendant is not allowed to bring money into court. Troubat and Haley's Practice, § 503. In applications of the present character the appeal is made to the equitable power of the court, which is exercised and is oftentimes indispensable to prevent injustice. Deckert's Appeal, 5 W. & S. 342. Whenever, therefore, payment of money into court is indispensable to prevent injustice, then and then only will the court permit a defendant to do so. As in all cases of the exercise of equitable powers, the party invoking the aid of the court ought to present a clear case, showing the injury that may arise unless the court interfere. With this principle in view, the disposition of the present case is free from difficulty. By act of assembly the owner is the party having the right to recover, the proceedings are instituted in his name and without objection a recovery has been had. The petitioner alleges 'that the land appropriated for the construction of the railroad and for which the damages are allowed is bound by the lien of certain judgments and mortgages.' Their nature, character and amount are not specified. It is not alleged nor is it shown that any injustice can possibly arise by the payment of the money to the owner who has recovered in the suit. On the contrary, the answer of the owner is 'that the amount of the verdict is but a very small fraction of the value of the plaintiff's property and of the liens against it.' Nor does any lien creditor appear here in court asking for any disposition of this money, nor alleging that payment to the owner would work any injustice or prejudice the value of his

security.   This action is instituted to No. 55 Sept. term, 1890.
The act of appropriation of land was notorious and public.
Creditors have therefore had ample time to make their claims.
No clear case calling for the exercise of the equitable powers
of the court is therefore shown, and under the circumstances of
this case it would be inequitable to order this money into court
to be diminished by the payment of poundage, etc.

" A brief examination of the authorities will clearly demon-
strate that this power of the court has not been exercised except
to prevent palpable injustice, and at the request either of lien
creditors whose security and rights were in danger, or where
the defendant was notified not to pay over by lien creditors so
imperiled.   Beginning with Schuylkill Navigation Company
v. Thoburn, 7 S. & R. 411, it has been decided, that none but
the owner or owners can sustain proceedings against the cor-
poration or company exercising its right of eminent domain in
the taking of the owners' lands, and that whatever claim lien
creditors having liens upon the land taken might possibly have
to the damages recovered, could only be enforced upon motion
to take the money out of court.   In Reese v. Addams, 16 S. &
R. 40, it was held that whilst the owner of the land is the par-
ty to bring suit, courts of justice would take care that the rights
of all interested in the proceeds of the land would be protect-
ed.   In this case the money recovered as compensation for the
land had been paid into court and the lien creditors appeared,
'asking the court to protect their rights, which will be absolutely
destroyed if the money be suffered to pass into the hands of
the owner of the land or his assignee.'   The owner by his as-
signee was not permitted to take the money, which was insuffi-
cient to pay the liens.   The plaintiff's assignee was demanding
the money, not as a trustee for lien creditors, but with the
intent to apply it to an entirely different purpose.   The court
intimated that ' a payment by the company to the owner would
be a protection to them, that they were not bound to see to the
application of the money unless perhaps on express notice.'

" In Deckert's Appeal, 5 W. & S. 342, the money had been
paid into court and the lien creditors ' were diligently pursuing
it to prevent it from going into the hands of the owner or his
assignee.'   The court sustained the claim of the lien creditors
upon the ground ' that rights would have been destroyed if the

money had been suffered to pass into the hands of the owner,'
who was insolvent; that the right of the court to do so ' comes
under the head of preventive justice, a beneficent and highly
useful branch of chancery jurisprudence.'    But the Supreme
Court also said ' that the owner of the land who was insolvent
had the legal right to receive the money from the company,
and payment to him would have been a good payment without
notice of the equitable interests.'    The right of the creditors
was preserved under the equitable powers of the court to pre-
vent injustice.    In Phila. v. Dyer, 41 Pa. 463, the existence
of liens on the land was held not to affect the right of the
owner to recover, and at the end of the opinion filed the court
say, ' we add only that if there are liens upon the lands the rights
of the lien creditors may be protected by ordering the fund to
be paid into court to be marshaled there.    Such liens do not
affect the right of the plaintiff to recover.'    In Workman v.
Mifflin, 30 Pa. 362, part of a lot out of which a ground rent
was reserved was taken for a public highway.    It was held,
' whilst the ground landlord was not an owner to whom dam-
ages could be awarded, that in equity a portion of the damages
could have been impounded to meet the accruing rents.'    Pow-
ell v. Whitaker, 88 Pa. 445, raised the question of priority of a
ground landlord having a lien for arrears of ground rent over
a judgment creditor in a claim for damages awarded for the
opening of a street through the ground.    The landlord was
protected upon equitable grounds, ' that he would be de-
fenceless unless he could in some way be protected by the
courts.'    His claim was largely in excess of the damages award-
ed.    Upper Dublin Road, 94 Pa. 126, as reported, is of but
little value except as an intimation that a mortgagee of property
alleged to be damaged by the opening of a road might, by a
petition with proper averments, bring himself upon the record
so as to obtain the benefit of said damages.    In this case, be-
cause of the want of the necessary averments, the Supreme
Court could not take cognizance of the question of the mortga-
gee's right to damages.

" The latest case on the question is that of Knoll v. New York,
etc., Ry. Co., 121 Pa. 467.    The company had constructed its
railroad and the plaintiff was the holder of a mortgage upon
the house and lot in front of which the railroad passed.    On

the assumption that the value of the property had been depreciated by the act of the company, and that therefore his security had been impaired, he sought to maintain his action for damages. It was held 'the right of action was in the owner of the freehold and not in the mortgagee, who was not in possession of the premises, and especially is this the case when the owner has already in good faith settled in full with the railroad company for the injury occasioned, and the mortgagee has made no attempt to collect his debt and fails to show that his mortgage interest has been impaired.' As to method of procedure when owner refused to proceed, it was said if the owner should refuse to move or should act fraudulently, the courts, on proper application by lien creditors, might treat him as a trustee and require him to do, or to permit his creditors to do in his name, what might be necessary to an adjustment of the damages, and impound the money for the benefit of those entitled thereto.

"But whenever the courts have obtained control over the damages assessed, distribution has been made on equitable principles, the owner being regarded as a trustee for lien creditors, and a recovery in his name to be controlled for their benefit. The courts have never taken control unless equity required it to prevent injustice.

"We therefore summarize the decisions on this question as follows:

"1. The owner is the proper party to maintain the action and adjust the question of damages, and receive them.

"2. A settlement with him in the absence of fraud will release the company.

"3. Lien creditors, by proper application to the court, showing that their rights are imperiled by the owner's refusal to bring suit or by fraudulent acts in making settlement, can compel him to bring suit, and the court will make such order as to secure a fair ascertainment of the damages, and a proper appropriation of them.

"4. This latter power of the court is purely equitable, and therefore a clear case for invoking this power is necessary to be shown.

"Under the facts in this case there is nothing to call for the

exercise of the equitable powers of the court in permitting the payment of the money into court and making distribution.

[ "And now, to wit, February 6, 1892, the application of the petitioner is refused, and the petition is dismissed.] [2]

*Errors assigned* were (1) refusal of application ; (2) decree, quoting it.

*Cyrus G. Derr,* for appellants.—The appropriation of land under the commonwealth's power of eminent domain is, as to the owner and his lien creditors, a conversion of the land into money, and the liens are shifted from the land to the fund represented by the damages : Workman v. Mifflin, 30 Pa. 370; Reese v. Addams, 16 S. & R. 43 ; and distribution follows, as of course.

As the conversion of the land and the shifting of the lien to the money which is made to represent the land is the act of the law, it should be the duty of the courts, as ministers of the law, to take charge of the fund and to give to the lien creditors an opportunity of claiming it under a judicial distribution : Schuylkill Nav. Co. v. Thoburn, 7. S. &. R. 419; Reese v. Addams, 16 S. & R. 40 ; City v. Dyer, 41 Pa. 470.   The court should impound the damages in question though the petition for that purpose be by defendant company and not by the lien creditors, because the said creditors have had no notice, either actual or constructive, of the conversion into money, and because such creditors have a lien upon the damages, and a payment to the landowner by the appellants, with actual notice of the existence of the liens, may leave them liable to the creditors : Reese v. Addams, 16 S. & R. 43 ; Deckert's Ap., 5 W. & S. 343; Upper Dublin and Whitemarsh Township Road, 94 Pa. 126 ; Knoll v. R. R., 121 Pa. 467.

*George F. Baer, Jefferson Snyder* with him, for appellees.— The opinion of the court below is a complete vindication of its action and nothing need be added to the argument.

The jury awarded the damages to plaintiffs, and they are entitled to receive them : Knoll v. R. R., 121 Pa. 475 ; Deckert's Ap., 5 W. & S. 343 ; Reese v. Addams, 16 S. & R. 43.

There must be express notice from the lien creditors that their interests are at stake to defeat the owner's right to the fund.

The land is not converted into money: Workman v. Mifflin, 30 Pa. 370; West. Pa. R. R. v. Johnston, 59 Pa. 294; Schuylkill & Susquehanna Canal Co. v. Decker, 2 Watts, 344.

OPINION BY MR. JUSTICE McCOLLUM, November 11, 1892.

This is an appeal from the refusal of an application by the Pennsylvania Schuylkill Valley Railroad Company for leave to pay into court a sum awarded against it as damages or compensation for land taken for corporate uses by proceedings under the act of February 19, 1849. The application is resisted by the Philadelphia & Reading Railroad Company which is the owner of the land so taken. It is admitted that there are mortgages and judgments to a large amount against the owner, which were liens upon the land at the time of its appropriation, and that the lien creditors have a claim upon the sum awarded which a court of equity on their motion will recognize and enforce. But it is contended by the owner that the appellant has no standing to invoke the aid of the court in behalf of the creditors, and that the order applied for is not necessary for its own protection. The case therefore involves a consideration of the respective rights of the owner, the appellant and the lien creditors. It is the undoubted right of the owner to institute and maintain proceedings for the recovery of the damages resulting from the appropriation of its land and to have the full benefit of the same. These damages are the price of the easement and on payment of them the appellant has a right to an unencumbered title. If the appellant receives that for which it pays and the price of the easement is passed directly to the owner, the real estate security of the lien creditors is impaired to that amount and their sole reliance for it is the personal responsibility of the owner. If on the other hand the security of the lien creditor is not affected by the condemnation proceedings, and the appellant has paid the owner without notice to them, it has not acquired an indefeasible title to the easement, but a title which may be divested by a sale on the mortgage or judgment liens. In Knoll v. Railway Co., 121 Pa. 467, it was held that a mortgagee out of possession could not maintain an action on the case against the company for an injury to the mortgaged premises arising from the construction of its road on a street in front of them, especially when the

mortgagee had made no attempt to collect his debt, failed to show that his mortgage interest had been impaired, and the owner of the freehold had already in good faith settled with the company for the injury occasioned.    But in the case cited a distinction was taken between an action for consequential injuries, and proceedings for damages occasioned by an entry upon and appropriation of the land.    In delivering the opinion of the court our Brother WILLIAMS said:    " There was, it will be remembered, no entry upon the lot in controversy, no appropriation of any part of it, or of anything upon or affixed to it, and as a settlement fairly made with the owner was, as we have seen, a final disposition of the claim for damages it follows that the plaintiff has no further remedy.    Had the road been located over any portion of this lot, and had the damages been settled by the parties or adjusted without notice to the plaintiff, it is probable that the lien of the mortgage would not be divested, and the mortgagee might in that case proceed upon his mortgage in the same manner as if a sale of part of the mortgaged premises had been made to a private person, selling first that which still belonged to the debtor, and if his money was not made thereby, then selling that which the railroad company had taken.    If such had been the situation the plaintiff would have had two remedies at his command, one through the owner as a trustee of the title for his lien creditors, and one as mortgagee to be made effective by proceedings upon his mortgage."

The statute under which the proceedings in the present case were instituted, contains no provision for notice to or for the protection of lien creditors, or declaratory of the effect upon the liens of the appropriation of the land bound by them.    It has been said in some of our cases that inasmuch as the land is taken for public use, public policy requires that the liens should be divested by the condemnation proceedings.    Reese v. Addams, 16 S. & R. 43; Deckert's Appeal, 5 W. & S. 342.    In these cases the lien creditors chose to consider the owner, in the proceeding for the assessment of the damages, as their trustee, and demanded that the sum awarded to him should be applied on their claims, but the question whether the party appropriating the land, with notice of the liens, would be protected by a voluntary payment to the owner was not considered or raised.    It

is clear that the owner would have the full benefit of the damages, if they were paid directly to him, or to his lien creditors in satisfaction or reduction of his indebtedness to them.

In this case as in Reese v. Addams, supra, the liens exceed the damages, and it is not alleged that the property bound by them is sufficient for their payment. A proper case is therefore presented for the exercise of the equity powers of the court for the protection of all the parties interested. The appellant should have leave to pay into court the sum awarded as compensation for the easement, and the lien creditors should have an opportunity to enforce their claims upon it, after which the court can make such order in the premises as justice requires.

The order refusing the appellant's application and dismissing its petition is reversed at the cost of the appellee, and the record is remitted for further proceedings in accordance with this opinion.