MUNICIPAL SECURITIES COMPANY, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, March 5, 1917.

1. TAX BILLS: Condemnation: Damages: City's Liability: Lien. The holder of a tax bill, issued by a city for public work has a lien on the land therein described; and if the city condemns such land for a park, the lien continues against the money in the hands of the city assessed as damages to the owner. If the city with knowledge of the lien pays the money to the owner without notice to the tax bill holder it becomes liable to the tax bill holder for damages measured by the loss of the money which should have been applied in discharge of the lien.

2. ———: Interpleader: Condemnation Money: Liability of City. M was the owner of tax bills which were a lien upon certain real estate in Kansas City, Missouri. The city condemned these lands with others, for a public park, and after the damages arising on the condemnation were ascertained and held by the city, it filed a bill of interpleader making the owners, mortgagees, and other lien holders, *except M*, parties and asking that they be required to interplead for their interests in the money arising from the land on which they had liens. The city knew of M's tax bill lien, and after paying to all lienors except M, it paid the remainder of the money to the owners of the land and M was thus left out. It was *held*, that the city was liable to M for the amount of the tax bills, they being less than the sum paid to the owners.

3. ———: ———: ———: ———: Estoppel. The fact that M. six months after the money had been paid to the owners filed an in-

tervening petition in the interpleader action, setting up a claim on four tax bills against other property arising for different work under difference ordinance, did not estop him in his claim against the city.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

Affirmed.

*John G. Park* and *Ingraham D. Hook* for appellant.

*Clarence S. Palmer* for respondent.

ELLISON, P. J.—Plaintiff is the assignee of three special tax bills issued to one Walsh in payment for public work done by him under a contract with the defendant city. This action was brought for the aggregate amount of those bills and judgment for that amount was rendered for plaintiff in the trial court. The case was therefore appealed to this court, but on suggestion of one of the parties was transferred to the Supreme Court on the ground that a constitutional question had been brought into the case. That court concluded that such question was not necessarily involved and returned the case here.

The tax bills were dated and issued on the 25th of January, 1901, and delivered to Walsh the next day and he immediately thereafter sold and assigned them to plaintiff. They were a lien on the lands therein described. They are transcribed on the public record and the world had notice of them and the lien they impose.

After they were issued and delivered the defendant city, by ordinance, established a public park which embraced within its limits the lands on which the bills were liens, which lands, with other tracts, were, in due course, condemned by defendant. Two of the tracts were owned by one Potter and the other by one Baker, and their aggregate value, as assessed in condemnation, was $15,232. There were incumbrances on portions of the property made up of a trust deed and other

195 M. A.—30

liens, and the city held back from these owners an amount sufficient to meet the aggregate of these sums, *viz,* $7500, and paid the remainder to Potter and Baker respectively; such remainder being more than the amount of the tax bills.

Afterwards, on the 13th of July, 1903, the defendant city filed a bill of interpleader making parties thereto, the owners of the land, the trustees in the deeds of trust and other lienors and parties in interest, *except this plaintiff and Walsh, its assignor,* although by way of abstracts that had been made, it knew of plaintiff's lien, besides having the general notice through operation of law, as has been already stated. The bill asked that the parties be required to interplead for the money due them according as the interest of each might be ascertained to be. Without going into unnecessary detail concerning the interpleader, it will suffice to say that the interests of various parties were ascertained and the money ordered paid to them out of the fund deposited with the court by the defendant city as has been stated.

After these payments had been made, this plaintiff having just learned of the interpleader, filed an intervening petition in that action, setting up its claim under four tax bills on other lands for small amounts aggregating less than one hundred dollars. Upon this circumstance, a claim of estoppel against plaintiff is urged by the defendant. But passing that for the present, the net result was that the park condemnation money for the land upon which plaintiff's tax bills now in suit were liens was all paid out to other parties than plaintiff, and the lands became a part of, and absorbed in, the city's park.

On this state of facts the question is, has the defendant city become liable to plaintiff for the amount of the tax bills? In our opinion no valid reason can be given why a liability does not exist. Three prominent facts stand out in the record. One that plaintiff had the lien; and, second, that defendant, appropriated the property on which the lien existed; and

third, that defendant paid out condemnation money to the owners, whose condemned lands it knew were subject to the lien of plaintiff's tax bills, without ever having given plaintiff any notice of its proceedings and of which plaintiff had no knowledge until about six months after the money had been paid. It can be stated in another way: It has been decided that if there is a lien for a tax bill against the real estate in a city which realty has been converted into a fund the lien will attach to the money. [Ross v. Gates, 183 Mo. 338, 347; Buchanan v. Kansas City, 208 Mo. 674, 681; Ross v. Gates, 117 Mo. App. 237.]

So when the city laid hold of that money and without right—without authority from the lienor—and with notice of his lien, paid it out to the owner of the realty, it converted the money and is liable to the lienor in damages measured by the loss of the money which should have been applied in discharge of the lien.

That one with an interest in land cannot have it taken from him by a condemnation proceeding without being made a party thereto is a fundamental proposition of law which finds apt illustration in Holmes v. Kansas City, 209 Mo. 513, 528. But getting closer to this controversy on its facts, we have State v. Railroad, 75 Nebraska 4, where the defendant railroad condemned a right of way over land subject to a lien for State taxes of which the road had record notice. The State was not made a party by the road when it instituted its proceedings or afterwards. The third syllabus of the case reads as follows:

"If a railway company on condemnation proceedings for its right of way and depot grounds fails to make all parties interested in the land parties to the proceedings or to give them notice of the proceedings so that their rights may be protected, it takes the land subject to such liens as are prior to the rights of the parties to the proceedings."

In referring to the result of its decision the court said that:

"The rule thus established does not put any hardship upon the railway company. The lien of these taxes was a matter of record. It could have been easily ascertained, and could have easily been provided for. Several cases have brought to our attention in which the courts of other States have held that, upon the suggestion of the railway company, the court would require taxes then existing upon the land to be paid out of the condemnation money while the same was in the hands of the court. [Philadelphia & R. R. Co. v. Pennsylvania S. V. R. Co., 151 Pa. 569, 25 Atl. 177.] However this may be, there can be no doubt that under our statute the railway company might protect itself by making lien holders parties to the proceedings, and if it neglects to do this, and allows the holder of the fee to obtain the entire reward, it cannot afterwards insist that the lien holders shall by such proceeding be deprived of their interest in the property."

In Wilson v. Railroad, 67 Maine, 358, there was a duly recorded mortgage on land which the railway company condemned for its tracks. No notice was given to the mortgagee and the whole damage for condemnation was paid over to the mortgagor and it was held that the railroad was liable to the mortgagee for the amount of his claim. In the course of the opinion the court said:

"We think a mortgagee should be notified and made a party to the proceedings, and that the railroad company takes the risk of a want of notice if none is given. . . . We have no doubt the mortgagee might resort to proceedings in chancery to recover the damages awarded to the mortgagor. But the railroad corporation must see that the mortgagee is somehow paid or satisfied for the land taken so far as covered by the mortgage. . . . Without notice a mortgagee might lose his entire security by proceedings carried on without his knowledge or consent."

The case of Borough of York v. Welsh, 117 Pa. St. 174, resembles that of Holmes v. Kansas City, supra. In stating the facts the court said the action

was debt "brought against the defendant (the Borough)
to enforce the payment of annual dower interest pay-
able to widow under the decree of the orphan's court.
It was contended by the defendant that it paid to
Augustus E. Fahs the full value of the entire lot,
including the dower charged upon it, and that the borough
is not liable to Mrs. Welch for the arrears of interest;
that she must look to Fahs, who got the money, for
her annual payments, or if not to him, to Zaccheus H.
Welsh, who took the ground in the partition subject
to this payment."

Of this the court said:

"It was undoubtedly the fault of the defendant
(The Borough) that the estate of Mrs. Welsh in the
land in question was not discovered, and provided for
in the proceedings to assess the damages. Her title
was fully spread upon the record of the orphan's
court in the proceedings in partition, and there was not
the slightest reason for overlooking it, and disregard-
ing her interests in the assessment of damages. . . .
The widow was in no default whatever, she was not
made a party nor in any manner notified of the taking
of the land by the borough. Of course she had no day
in court, and no opportunity to assert her rights or
protect her interests. In such circumstances she could
not possibly be divested of her estate in the land, or
of the least fragment of her interests, by proceedings
which, as to her were purely *ex parte.*"

In consideration of the natural justice of plaintiff's
claim and the foregoing authorities sustaining actions
based on like conditions and principles, we have no
hesitation in affirming the view taken by the trial court.

The matters set up in defense and elaborated in
brief and argument do not meet the case that plain-
tiff has made. As before intimated, it is said that
plaintiff is estopped by having intervened in the inter-
pleader proceeding. We reject that idea. This inter-
vention was near six months after the condemnation
money had been paid to the owners of the property,
and the claim therein was based on four small tax

bills, for different work, arising out of a different ordinance, and were liens on other property from that here involved, owned by different persons.  At the time of intervening defendant's wrong to plaintiff had been consummated by paying the money to the owners of the land, which should have been paid to plaintiff.

Defendant next insists that the lien for plaintiff's tax bills was taken off the land and transferred to the money arising out of its condemnation, and that therefore that fund should be followed by some appropriate action against the owners who received it from the city.  It is not necessary to inquire what other remedy or remedies plaintiff may or may not have, as long as the one it has elected to pursue, rightfully belong to it and upon every just and legal principle affords relief.

What we have written is sufficient to dispose of the case and makes unnecessary to pass upon other points.

The judgment is affirmed.  All concur.