[Civ. No. 4095. Fourth Dist. Apr. 13, 1951.]

CITY OF FRESNO, Appellant, v. EMIL A. HEDSTROM et al., Respondents.

C. M. Ozias, City Attorney (Fresno), for Appellant.

Aynesworth & Hayhurst and Irvine P. Aten for Respondents.

MUSSELL, J.—The instant action was commenced by the city of Fresno to acquire title by condemnation proceedings to the south 10 acres of a 40-acre farm owned and occupied by the defendants. The jury found that the value of the 10 acres sought to be condemned was $10,000 and awarded the further sum of $6,000 as "severance damages." Plaintiff appeals from the judgment entered against it for the sum of $16,000.

The 40-acre tract owned by defendants is rectangular in shape and is approximately 2,640 feet long (north and south) and 648 feet wide (east and west). The south frontage of 648.45 is on Shields Avenue, which runs east and west and bounds the property owned and operated by the city as a municipal airport on the north. In 1939 the city acquired the airport property (1,100 acres) and leased it to the United States government. This property was used as a training ground by the government air forces and was known as the "Hammer Field Air Base." A few years later the govern-

ment released the property to the city, at which time the name of the airport was changed to "Fresno Air Terminal" and since that time the city has been maintaining and operating it. It is used extensively by commercial air lines, privately owned aircraft and to some extent by the United States government.

One of the main runways of the airport, if extended northwesterly would cross the 10 acres sought to be condemned from the southeast corner to the northwest corner thereof. For several years a "localizer" has been maintained, by agreement with defendants, on the northwest corner of the 10-acre tract. The "localizer" sends a beam of light down this main runway, thereby enabling aircraft on landing to "line up on the beam" and land in bad weather. The present action was filed by the city to acquire the south 10 acres of defendants' property for additional facilities for the operation of the airport.

At the trial, the defendants and their two sons were permitted, over plaintiff's objection, to testify that aircraft, in taking off from and landing at the airport, flew over defendants' entire property; that the noise from low-flying planes kept the defendants awake at night; that they were annoyed by the lights from the planes at night; that they were inconvenienced in the use of their telephone because of the noise; that the airplanes caused their house to vibrate and the windows to rattle; and that upon one occasion during the war the defendants attempted to raise turkeys but were obliged to discontinue doing so because the landing lights and the glare from the planes at night caused them to stampede; that the value of the entire property was damaged by the constant low flying of aircraft across it.

The appellant contends that the foregoing testimony should have been excluded and that the trial court erroneously included as one of the issues in the case the question of damages heretofore sustained and now being sustained by the defendants by reason of the low flying of aircraft over the 30 acres not taken and argues that the giving of two instructions in that connection constituted prejudicial error.

The principal question for our determination is whether the award of $6,000 for severance damages can be sustained under the evidence and in view of the instructions given by the trial court.

The rule for determining severance damages is stated in

paragraph 2, section 1248 of the Code of Civil Procedure, as follows:

"If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff."

As was said in *Arnerich* v. *Almaden Vineyards Corp.,* 52 Cal.App.2d 265, 272 [126 P.2d 121]:

"To recover severance damages under section 1248, subdivision 2, of the Code of Civil Procedure, the loss in market value claimed must directly and proximately flow from the taking. Damage which is speculative, remote, imaginary, contingent, or merely possible, or damage caused by competition, or recovery in advance for torts or other injuries that may or may not be committed cannot serve as a legal basis for recovery. (2 Nichols on Eminent Domain, (2d ed.) p. 736, § 239; 29 C.J.S., p. 1013, § 154; *Coast Counties Gas & Electric Co.* v. *Miller & Lux, Inc.,* 118 Cal.App. 140 [5 P.2d 34]; *East Bay Mun. Utility Dist.* v. *Kieffer,* 99 Cal.App. 240 [278 P. 476, 279 P. 178].)"

In *McDougald* v. *Southern Pac. Co.,* 162 Cal. 1, 3 [120 P. 766], in an action by the owners of land to recover compensation from a railroad for a part of the land permanently appropriated for the public use, it was held the plaintiff was entitled to receive as damages the difference between the value of the entire parcel as it was just before the defendant took permanent possession, and its value immediately after the works of the defendant were completed and put in operation, taking into consideration all the injurious consequences to the part of the land not taken, reasonably probable from such works and the operation thereof and from the severance of the land taken.

The testimony relative to the effect of low-flying aircraft over the 10-acre tract involved and over the remaining 30 acres of defendants' property was admissible only to determine the damage, if any, to the 30 acres insofar as it affected its market value. The materiality of such evidence depended upon a showing that the damages, if any, were caused or would be caused by the taking of the 10 acres. As pointed out by appellant, some of the evidence introduced over objection related to inconvenience and detriment suffered by defendants long prior to the filing of the instant action. In this

458

connection, Wilmer Garrett, superintendent of airports for the city of Fresno, testified that airplanes had been flying over the Hedstrom property ever since the establishment of Hammer Field and that there were no severance damages occasioned by aircraft flying. Other witnesses for plaintiff also testified that there were no severance damages. The evidence was sufficient to support a finding by the jury that there were no severance damages occasioned by the low-flying aircraft and the verdict does not state that damages were awarded for that reason. ▇▇▇ There was, however, substantial evidence to support the award of severance damages made by the jury as having been occasioned by the loss to defendants' land in frontage on Shields Avenue, the loss of access and egress to the 30 acres and the depreciation in its value for subdivision purposes.

Speed B. Leas, a qualified appraiser and real estate broker, for many years familiar with the property, testified as follows:

"That by taking the 10 acres and eliminating the free access to the 30 acres from any point on Shields Avenue as a studied program of subdivision might indicate was the most practical, it has damaged the remaining land solely now from the point of subdivision at least $250 per acre."

This testimony, if believed by the jury was sufficient to support the award of damages as having been occasioned solely by the depreciation of defendants' property for subdivision purposes.

There was additional testimony supporting the verdict of the jury. Emil A. Hedstrom, one of the defendants, testified that in his opinion the damage resulting to the remaining 30 acres by the severance of the 10 acres therefrom and the creation of airways over his property to and from the airport was $10,000; that this damage was occasioned by depreciation on account of the loss of frontage of property on Shields Avenue and depreciation damage by reason of the airplane traffic; that it would be difficult to segregate the two elements of damage and that the reasonable market value of the 10-acre tract was $11,000.

C. E. Byde, a qualified appraiser, testified that in his opinion the reasonable market value of the property being taken by the city was $8,000; that the severance damages amounted to the sum of $11,000; that he based his appraisal as to the severance damages on the fact that the taking of the 10 acres eliminated the access and egress to the remaining 30 acres. He further stated that the taking of the south 10 acres, the

best one-fourth of defendants' property, would depreciate the market value of the remaining land as subdivision property, its best and highest use; that he had also considered the effect of low flying planes and that the difference between the value of defendants' property as agricultural land and as subdivision property was $11,000, after eliminating the south 10 acres.

■ The jury, in its verdict, and the trial court, in its findings, did not specify what portion, if any, of the $6,000 awarded was for damage occasioned by aircraft and since there was sufficient substantial evidence to support the findings and judgment on other grounds, the general verdict should not be set aside for lack of evidentiary support. (*Wells* v. *Brown*, 97 Cal.App.2d 361, 364-365 [217 P.2d 995].)

■ It is argued that the court erred in giving the following instructions to the jury:

"You are instructed that if you find from the evidence that the City of Fresno is condemning the south ten acres of defendants' land for use as a portion of its Municipal Airport and intends to and will use the air space immediately above the remaining thirty acres of defendants' land lying directly north thereof at such a low altitude as to appreciably interfere with, or lessen, or destroy its profitable and enjoyable uses for any purposes for which now or in the future it may be profitably or beneficially used, then and in such event, the defendants are entitled in this action to recover the damages for loss of use and enjoyment even to the full value of the remaining land of defendants, if that be found to be the loss therefrom."

"If you find that the defendants' land is so situated that it is reasonably suitable for a residential subdivision but that its value as a residential subdivision will be lessened by the operational hazards of low-flying aircraft and other hazards resulting from the appropriation of the immediate superadjacent air space of the remaining 30 acres, if you find that in its operation of said air terminal said air space will have been appropriated by the proposed use of said property being taken by the plaintiff, that the fact should be taken into account in estimating the market value of the lands of the defendants not being taken."

Plaintiff's position is that the remedy of defendants for damages, if any, by reason of the low flying of aircraft over the remaining 30 acres of defendants' property is one either for injunctive relief or for damages for trespass and that the jury, under the instructions, was given an unrestricted dis-

cretion in assessing whatever damages it desired without regard to the limitations prescribed by the laws and regulations applicable to aerial navigation.

The first of the two-quoted instructions should have limited the allowance of damages occasioned by low-flying aircraft to that caused by the taking of the 10-acre tract involved. The second instruction informed the jury that it could take into account the effect of the proposed use of the property being taken by the plaintiff. However, the court correctly instructed the jury as to the law applicable in the following instruction:

"You are instructed that in determining the damages, if any, which will result to that part of the defendants' land not sought to be condemned, namely, the remaining 30 acres, you must determine the market value on February 21, 1950, of the said remaining 30 acres and then deduct from such amount the market value of said 30 acres after the taking of the 10 acres in the manner proposed, . . . taking into consideration all the injurious consequences, if any, to the remaining 30 acres not taken, reasonably probably to follow from the works of the city upon the 10 acres and the operations thereof. The difference between these values, if you find from the evidence that there is any difference, will be the amount of damages to which defendants will be entitled on account of the injury to the remaining 30 acres of their property. If you find that the market value of said remaining 30 acres has not diminished or decreased, then the defendants are not entitled to recover anything in this action except the market value of the 10 acres sought to be condemned."

If the plaintiff desired to further clarify the issues in this respect, it was incumbent upon it to submit and request such instruction and if, as is contended by the plaintiff, the court should have submitted instructions as to the laws and regulations applicable to aerial navigation, no error resulted for the same reason. (24 Cal.Jur., p. 796; *Peckham* v. *Warner Bros. Pictures. Inc.*, 42 Cal.App.2d 187, 189 [108 P.2d 699].)

■ Plaintiff next argues that the failure of the defendants to file a claim against the city of Fresno is a complete bar against the recovery of the damages claimed by the defendants. However, the city did not set up this defense in the pleadings or at the trial and cannot now raise it for the first time upon appeal. ■ Our attention has not been directed to any authority requiring the filing of a claim against

a city in an action in condemnation brought by it. The filing of such a claim is not necessary.

■ Finally, it is argued that the evidence does not support the finding of the jury that the property taken was of the actual value of $10,000. There was, however, substantial evidence to support this finding. Marshall M. Pipes, the owner of the 40 acres immediately east of the Hedstrom property, testified that the reasonable value of the 10-acre tract sought to be condemned was $1,000 per acre, and one of the defendants (Emil A. Hedstrom) fixed the value at $11,000. ■ It is a recognized rule that the owner of property, whether generally familiar with such values or not, is competent to estimate its worth, the lack of knowledge going to the weight rather than the admissibility of the testimony. (*Stroman* v. *Lynch*, 91 Cal.App.2d 406, 408 [205 P.2d 409].)

■ As was stated in *Employees' Participating Assn.* v. *Pine*, 91 Cal.App.2d 299, 303 [204 P.2d 965]:

" 'Questions of value are almost always matters of opinion, and evidence thereon usually goes no further than to give the court more or less general ideas on the subject. From the evidence thus received a trial court must draw its own conclusions of value by a process of balancing and reconciling, if possible, the varying opinions. . . . (T)he trial court, in an effort to attain an even justice, often exercises a wide discretion in awarding damages.' "

■ In the instant case the jury had a wide discretion in awarding damages and its finding in that respect, being supported by substantial evidence, will not be here set aside.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.