[L. A. No. 23692. In Bank. Feb. 8, 1957.]

H. J. WILSON, Appellant, v. CHARLES HENRY BE-
VILLE et al., Defendants; THE CITY OF LOS AN-
GELES, Respondent.

Guerin & Guerin and John J. Guerin for Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Peyton H. Moore, Jr., Chief Deputy City Attorney, and Spencer L. Halverson, Deputy City Attorney, for Respondent.

CARTER, J.—Plaintiff appeals from a judgment declaring that he is the owner of a certain parcel of land subject to the defendant city's easement for street purposes. He brought the action to quiet title to the land and for ejectment. He claims title by virtue of a city treasurer's deed issued to his predecessor in interest pursuant to a foreclosure sale following the default in payment of a street improvement bond issued under the Improvement Act of 1911 (now Sts. & Hy. Code, §§ 5000-6794).

The assessment resulting in this bond was recorded on November 23, 1927. The bond was issued on December 28, 1927, to the Municipal Bond Company. On November 25, 1927, the defendant city commenced a condemnation proceeding under the Street Opening Act of 1903 (Sts. & Hy. Code, §§ 4000-4443), in which it acquired an easement for street purposes across a part of the land upon which the improvement bond constituted a lien. Neither the owner of that lien nor any holder of the bond was joined as a party to the condemnation proceeding. Final judgment of condemnation was entered on July 23, 1931, and the record owner of the portion condemned was awarded and paid the sum of $5,376.20. The city took possession of the condemned property on January 22, 1932, forthwith devoted it to public use as a part of a city street, and has continued to devote it to the same use.

Meanwhile, on October 19, 1938, a certificate of treasurer's sale of the property in question was issued to one Al Schuh. The certificate was transferred to Betty Wilson, and on

August 23, 1950, a treasurer's deed was issued to her. She quitclaimed to the plaintiff on April 12, 1951, and he filed this action on the following day. No portion of the assessment or bond has been paid.

The plaintiff contends that his title to the property is not subject to any city easement, but that even if the city has acquired an easement over the property, the doctrine of inverse condemnation entitles him to compensation for at least the value of the lien at the time the easement was acquired.

The city claims that the 1927 condemnation proceeding established an easement over the property valid as against the plaintiff. It argues that the lien of the improvement bond was transferred to the award in the condemnation proceeding despite the failure to join the lienholder, and that the lienholder's remedy was to appear and assert his rights in the condemnation proceeding or to collect the amount of the bond from the person who received the award—the then owner of the fee.

█ Where a condemnation award is placed on deposit in court the lien attaches to the award and is removed from the condemned land. However, where, as here, the award has been paid to the owner of the fee, the rights of a lienholder who has not been joined as a party to the condemnation proceeding have not been clearly defined in this state.

Generally, the statutes regulating eminent domain procedure make it evident that the lienholder's interest should be protected in some manner. (*Thibodo* v. *United States* [9th Cir.], 187 F.2d 249, 255-257; see Code Civ. Proc., § 1244, subd. 2, § 1245.3, § 1248, subds. 1, 8, § 1252.) The city did not choose to protect the lienholder by depositing the award into court as authorized by section 1252 of the Code of Civil Procedure. It did not deduct the amount of the lien from the award, as authorized by subdivision 8 of section 1248 of the Code of Civil Procedure. The interest of the lienholder in the property was a matter of record. █ Although the city was apparently required to make him a party to the condemnation proceeding (see Code Civ. Proc., § 1244, subd. 2; see, also, Code Civ. Proc., § 1245.3), it did not do so, but under the 1903 act only notice must be given (Sts. & Hy. Code, §§ 4209-4211). From a consideration of all of the factors involved, it appears that the failure to join the lienholder in the 1927 condemnation proceeding left his lien unimpaired. (In accord, see *Thibodo* v. *United States, supra* [9th Cir.], 187 F.2d 249;

*Municipal Securities Corp.* v. *Kansas City,* 195 Mo.App. 464 [193 S.W. 880] ; *State* v. *Missouri Pac. Ry. Co.,* 75 Neb. 4 [105 N.W. 983] ; *Ehlers* v. *Chicago, B. & Q. R. Co.,* 118 Neb. 477 [225 N.W. 468].)

■ Although the 1927 condemnation proceeding was not effective to perfect the city's title as against the plaintiff, the city has devoted the property to a public use since 1932.

This fact precludes the plaintiff from gaining possession and thereby disrupting the public use—it vests the city with an easement. (*Hillside Water Co.* v. *City of Los Angeles,* 10 Cal.2d 677 [76 P.2d 681] ; *Hossom* v. *City of Long Beach,* 83 Cal.App.2d 745 [189 P.2d 787] ; *Chilberg* v. *City of Los Angeles,* 54 Cal.App.2d 99 [128 P.2d 693].)

■ The plaintiff's contention that the doctrine of inverse condemnation entitles him to compensation for the taking of a part of his interest in the property is correct. (*Hillside Water Co.* v. *City of Los Angeles, supra*; 17 Cal.Jur.2d, Eminent Domain, § 7, pp. 585-586; 18 Cal.Jur.2d, Eminent Domain, § 374, pp. 95-96.) However, defendant contends that plaintiff's claim for compensation is lost by his failure to file a claim with the city as required by sections 363 and 376 of the city charter. Those sections require that a written claim for any money or damages asserted to be due from the city be filed with the city clerk within six months after the occurrence from which the claim arose. No claim of any kind unless plaintiff's complaint be so considered was ever filed by plaintiff. It is unnecessary to decide whether the plaintiff's claim arose in 1932 when the property was devoted to a public use, in 1950 upon the issuance of the treasurer's deed, or at some time between these two dates. The trial court found that no claim was filed by the plaintiff or his predecessors in interest, and this action was commenced more than six months after the treasurer's deed was issued, but as will be seen, it was not necessary for plaintiff to file a claim under the charter; the charter provisions have no application to claims for compensation under inverse condemnation.

■ Plaintiff was not required to file a claim with the city in order to be entitled to compensation for his land taken under the power of eminent domain. The claim filing requirements of the Los Angeles Charter (L. A. Charter, §§ 363, 376) cannot apply to a claim for compensation when a taking is by eminent domain because it is not a municipal affair; it is a matter of statewide concern and may be regulated only by the state Legislature, such as the statutes of limita-

tion. Even if the charter may legislate on the subject the provisions are not applicable to a claim for compensation for property taken by eminent domain.

It has been held repeatedly that where liability is imposed by statute* the method or regulation of the enforcement of the liability such as claim filing and limitation of actions is not a municipal affair controllable by city charter. (*Wilkes* v. *City & County of San Francisco,* 44 Cal.App.2d 393 [112 P.2d 759]; *Helbach* v. *City of Long Beach,* 50 Cal. App.2d 242 [123 P.2d 62]; *Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225].)

For illustration, it is said in the Helbach case (p. 246): "Respondent also urges, as before noted, that the erection and maintenance of the building was a purely municipal affair and that therefore the procedure, including limitation of time, for filing claims against the city arising out of its tortious acts or omissions in connection with such building is likewise exclusively of municipal concern and governed by its charter. Even if we assume respondent's premise her asserted conclusion does not follow. The opening and maintenance of public streets is typically a municipal affair . . . but liability for defective streets, *including the procedure for enforcing it, is a matter of general state concern* (*Wilkes* v. *City, etc., of San Francisco* (1941), *supra,* 44 Cal.App.2d 393, 397 [112 P.2d 759]; *Douglass* v. *City of Los Angeles* (1935), *supra,* 5 Cal.2d 123, 128 [53 P.2d 353]). . . . [I]f the building be a proprietary undertaking the city is liable for its torts regardless of the provisions of Act 5619, *supra* (Deering's Gen. Laws, 1937, p. 2630; Stats. 1923, p. 675) and if it be governmental in character liability is imposed by that act. In either case the liability for tort, *including procedure for its enforcement, is a matter of public concern.*" (Emphasis added.) In the Wilkes case the court said (p. 395): "The right to recovery does not arise under charter provisions but under state law. The state has the power to prescribe the method of enforcing the claim. If the state fixes the period as ninety days within which such a claim may be filed, a municipality, even by charter provisions, may not ordain that the claim will not be recognized unless filed within a shorter period. No right of action is given by charter to seek damages against the City and County of San Francisco as the result of a defective or dangerous condition

---

*Here it is imposed by the Constitution (Cal. Const., art. I, § 14.)

of a public highway. Such right exists only under the state law. The municipality may not curtail or abridge such right by providing that the claim shall be filed within eighty-nine days or one day. If it had the right to fix a period of sixty days it likewise has the power to change that period. The right to fix the time within which the claim may be filed is purely a legislative matter. (*Douglass* v. *City of Los Angeles,* 5 Cal.2d 123 [53 P.2d 353]; *Wicklund* v. *Plymouth E. School Dist.,* 37 Cal.App.2d 252 [99 P.2d 314]; *Norton* v. *City of Pomona,* 5 Cal.2d 54 [53 P.2d 952]; *Johnson* v. *City of Glendale, supra* [12 Cal.App.2d 389 (55 P.2d 580)]; *Thompson* v. *County of Los Angeles,* 140 Cal.App. 73 [35 P.2d 185]; *Kahrs* v. *County of Los Angeles,* 28 Cal.App.2d 46 [82 P.2d 29]; *Strath* v. *City of Santa Rosa,* 19 Cal.App.2d 382 [65 P.2d 894]; *Spencer* v. *City of Calipatria,* 9 Cal.App.2d 267 [49 P.2d 320]; *Young* v. *County of Ventura,* 39 Cal.App. 2d 732 [104 P.2d 102]; *Kline* v. *San Francisco U. School Dist.,* 40 Cal.App.2d 174 [104 P.2d 661]; *Kelso* v. *Board of Education,* 42 Cal.App.2d 415 [109 P.2d 29].) If the soundness of the rule that the claim must be filed in accordance with the time limit provided in the statute rather than in the charter has been recognized by the courts of this state, as appears above, there can be no doubt that the same rule holds relative to the place of filing unless some good reason appears to the contrary.'' In the Eastlick case the court said: ''[A] city, by adopting a charter, becomes independent of general laws *only* as to 'municipal affairs,' and that in matters of general statewide concern the general law is paramount ... . that the existence of a municipality's liability for the dangerous or defective condition of its streets is a matter of state concern . . . that with regard to such a matter local regulations may be enforced only if they are not in conflict with the general law. . . . However, defendant contends that its charter provision as to itemization of damages is merely supplementary to the general law—an additional, not a contrary requirement—and therefore is valid. As authority for this position, defendant cites such cases as [citations]. But these cases concerned local prohibitory enactments adopted, in the municipality's exercise of the police power, in a field where the applicable state law contained language expressly indicating that the Legislature did not intend its regulations to be exclusive. . . . 'Whether the legislature *has undertaken to occupy exclusively a given field of legislation,*' so that a local regulation imposing a higher

standard of conduct with regard to the subject covered would necessarily be in conflict, 'is, we think, to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it was intended to operate.' '' (Emphasis added; *Eastlick* v. *City of Los Angeles, supra,* 29 Cal.2d 661, 665-666.) ■ This is in line with the general rule that charter provisions cannot control in matters of statewide concern where the state has occupied the field. "Although the adoption of local rules supplementary to state law is proper under some circumstances, it is well settled that local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute. (. . . *Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661, 666 [177 P.2d 558, 170 A.L.R. 225].) Determination of the question whether the Legislature has undertaken to occupy exclusively a given field of legislation depends upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate. (*Eastlick* v. *City of Los Angeles, supra,* 29 Cal.2d at p. 666; *Pipoly* v. *Benson, supra,* 20 Cal.2d at pp. 372-375 [125 P.2d 482, 147 A.L.R. 515]; *In re Iverson,* 199 Cal. 582, 586-587 [250 P. 681]; *Ex parte Daniels,* 183 Cal. 636, 642, 643 [192 P. 442, 21 A.L.R. 1172].) Where the Legislature has adopted statutes governing a particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. (*Eastlick* v. *City of Los Angeles, supra,* 29 Cal.2d at p. 666. . . . )'' (*Tolman* v. *Underhill,* 39 Cal.2d 708, 712 [249 P.2d 280].) And: "If, however, there is any conflict between charter provisions and the compensation sections of the Labor Code, the latter must prevail. Under power expressly granted to it by the Constitution, the Legislature has established a complete system of workmen's compensation which obviously is a subject of state-wide concern, and it is well settled that in such matters the general law is paramount. (See *Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661, 665-666, 668 [177 P.2d 558, 170 A.L.R. 225].)'' (*Healy* v. *Industrial Acc. Com.,* 41 Cal.2d 118, 122 [258 P.2d 1].) ■ The exercise of the power of eminent domain is a matter of statewide concern, not a municipal affair, which cannot be abrogated by a municipality; it must be exercised in accordance with state law. (*Alexander* v. *Mitchell,* 119 Cal.App.2d 816 [260 P.2d 261]; *City & County of San Francisco* v. *Ross,* 44 Cal.2d 52

[279 P.2d 529]; *Harden* v. *Superior Court,* 44 Cal.2d 630 [284 P.2d 9].)

*The Legislature has fully occupied the field of eminent domain.* The Constitution provides: "Private property shall not be taken or damaged for public use without just compensation having *first been made to, or paid into court for, the owner,* and no right of way . . . shall be appropriated to the use of any corporation, except a municipal corporation . . . until full compensation therefor *be first made in money or ascertained and paid into court for the owner* . . . provided, that in any proceeding in eminent domain brought by . . . a municipal corporation . . . the aforesaid . . . municipality . . . may take immediate possession and use of any right of way . . . required for a public use whether the fee thereof or an easement therefor be sought upon *first commencing eminent domain proceedings* according to law in a court of competent jurisdiction and thereupon giving such security in the way of money deposited as the court in which such proceedings are pending may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner of the property sought to be taken immediate payment of just compensation for such taking and any damage incident thereto, including damages sustained by reason of an adjudication that there is no necessity for taking the property, as soon as the same can be ascertained according to law." (Emphasis added; Cal. Const., art. I, § 14.) ■ This provision is self-executing. (*Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505].) The Legislature has provided a complete and detailed system for exercising the right of eminent domain and assessing compensation. (Code Civ. Proc., §§ 1237-1266.2.)

Here the charter claims provisions are stringent statutes of limitations—procedural restrictions. (*Farrell* v. *County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]; *Norton* v. *City of Pomona,* 5 Cal.2d 54 [53 P.2d 952]; *Shea* v. *City of San Bernardino,* 7 Cal.2d 688 [62 P.2d 365]; *Thompson* v. *County of Los Angeles,* 140 Cal.App. 73 [35 P.2d 185]; *Rhoda* v. *County of Alameda,* 134 Cal.App. 726 [26 P.2d 691]; *Rose* v. *State supra,* 19 Cal.2d 713, 725, referring to *Crescent Wharf etc. Co.* v. *Los Angeles,* 207 Cal. 430 [278 P. 1028].) Such procedural matters are fully covered by the state statutes such as those on eminent domain (Code Civ. Proc., § 1237 et seq.) and those on limiting the time

within which actions may be brought. (Code Civ. Proc., §§ 338, subd. 2, 318-325.)* A city charter cannot give a shorter time, make more onerous the recovery of compensation, than the legislation has. As said in *Eastlick* v. *City of Los Angeles, supra,* 29 Cal.2d 661, 666: "... a municipality may not curtail or abridge the rights so granted [right to recover for tort] *by specifying, through charter provision, a shorter time limitation . . . than the period fixed by the statute."* (Emphasis added.) Assuming a charter may require the presentation of a claim, it cannot enact statutes of limitations. That is a matter of statewide concern. If the city may enact such legislation or charter provisions the land owner is denied equal protection of the laws for the state statute would fix the limitation where the condemnor was a public utility but a different one would prevail where the condemnor was a municipal corporation. There is no distinction between such condemnors. The city along with public utilities are made equally liable by the Constitution.

*Crescent Wharf etc. Co.* v. *Los Angeles,* 207 Cal. 430 [278 P. 1028], fails to consider the above mentioned factors and should be overruled. The same applies to *Young* v. *County of Ventura,* 39 Cal.App.2d 732 [104 P.2d 102].

 On the second point it should be clear that the charter provisions do not apply to a conventional eminent domain proceeding. "Our attention has not been directed to any authority requiring the filing of a claim against a city in an action in condemnation brought by it. *The filing of such a claim is not necessary."* (Emphasis added; *City of Fresno* v. *Hedstrom,* 103 Cal.App.2d 453, 460 [229

---

*There may be some question which statute applies in inverse condemnation cases. It is said: "Which statutory period of limitations applies to an inverse condemnation suit does not appear to be definitely settled. In cases that classified the action as one in trespass, the 3-year period prescribed in section 338 subdivision (2) of the Code of Civil Procedure has been applied. There are cases, however, which distinguish between a mere trespass action and an action for damages because of the taking or damaging of private property under the power of eminent domain, and on this basis consider the 5-year period to be applicable. Thus, it has been held that since the riparian rights of an owner of real property are an inherent part of the land, and since the appropriation of water is therefore a detriment which must be distinguished from a mere trespass, an action on the theory that the defendant's appropriation of the plaintiff's riparian right to water constituted a taking and damaging of real property without compensation does not expire short of the 5 years necessary for the defendants to have acquired title to the water by adverse possession." (18 Cal.Jur.2d, Eminent Domain, § 382.) In any case the time within which recovery may be had is covered by state statute.

P.2d 809].) ▮▮▮ In inverse condemnation the property owner is forced to prosecute proceedings otherwise he is remediless (*Heimann* v. *City of Los Angeles,* 30 Cal.2d 746 [185 P.2d 597].) His action may be to recover the property and for preventive relief in that connection. (*Collier* v. *Merced Irr. Dist.,* 213 Cal. 554 [2 P.2d 790].) It is thus not a demand for money within the charter provisions. It becomes so only because the city invokes the intervention of its public use as a defense to preventive relief and makes the property owner take compensation instead of his property. By wrongfully failing to follow the eminent domain procedure the city forces the property owner to take the initiative. It is still an eminent domain proceeding and claims are not necessary in such proceedings.

While the instant eminent domain proceedings were under the 1903 Street Opening Act, *supra,* even if it is assumed that those provisions in some respects control over the general provisions on eminent domain in the Code of Civil Procedure, the fact still remains that there is a complete system of state law for eminent domain proceedings.

▮▮▮ Defendant urges that plaintiff and his predecessors had notice of the improvement proceedings, for which an assessment was levied which resulted in the lien, for the establishment of the street and made no objection and is hence estopped and guilty of laches. We fail to see how the notice of the assessment proceedings affects the situation. Plaintiff relies upon the lien arising therefrom. There is no change of position in reliance on the inactivity of plaintiff's predecessors except the establishment and use of the street. This use excludes the remedy to obtain possession of the land but not for compensation for the taking (see authorities cited in the forepart of this opinion).

The judgment insofar as it determines that plaintiff is the owner of the property subject to the right of way for the street is affirmed but is reversed insofar as it determines that plaintiff is to take nothing by the action. Plaintiff shall recover costs.

Gibson, C. J., Traynor, J., Schauer, J., and Dooling, J. pro tem.,* concurred.

SHENK, J.—I dissent.

In 1927 the city of Los Angeles, pursuant to street im-

*Assigned by Chairman of Judicial Council.

provement proceedings under the Improvement Act of 1911 (Stats. 1911, p. 730; now Sts. & Hy. Code, §§ 5000-6794) levied an assessment for benefits for street improvements on real property including Lot 195 Tract 6710. Assessments that were not paid went to bond, including the assessment on Lot 195 for $207.57, here involved. On December 28, 1927, the bond was acquired by the Municipal Bond Company. On November 25, 1927, the city commenced another street improvement proceeding pursuant to the Street Opening Act of 1903 (Stats. 1903, p. 386). This proceeding was authorized by Ordinance 58294 entitled "An ordinance ordering the laying out, opening and extending . . ." of the streets named in the ordinance. By an order of condemnation pursuant to that proceeding the city acquired an easement for street purposes across a part of Lot 195 upon which the improvement bond constituted a lien. The owner of the bond lien was not made a party to that condemnation proceeding. The assessment represented by the bond was not paid and the bond was foreclosed. On October 19, 1938, a certificate of treasurer's sale was issued to the plaintiff's predecessor in interest who quitclaimed to the plaintiff on April 12, 1951. This action to quiet title was commenced the following day.

That the opening, widening and improvement of public streets within a chartered city is a municipal affair is the established law of this state, and there are no decisions to the contrary. Prior to 1896 municipal charters were subject to and controlled by general laws. By an amendment of section 6 of article XI of the Constitution in 1896 such charters continued to be subject to and controlled by general laws "except in municipal affairs." In the case of *Byrne* v. *Drain* (1900), 127 Cal. 663, this court said at page 667 [60 P. 433] : "That the matter of opening the streets of a municipality is a municipal affair is not disputable under the authorities. (*Sinton* v. *Ashbury,* 41 Cal. [525] 531; *People* v. *Holladay,* 93 Cal. 241 [29 P. 54, 27 Am.St.Rep. 186] ; *Hellman* v. *Shoulters,* 114 Cal. [136] 141 [44 P. 915, 45 P. 1057].)"

In the case of *City of Los Angeles* v. *Central Trust Co. of New York,* 173 Cal. 323, this court stated at page 327 [159 P. 1169] : "The opening, laying out, and improvement of streets within a city, and the regulation of the manner of their use are matters of much greater concern to its inhabitants than to the people of the state at large, and they are clearly municipal affairs, the control of which has always been deemed within the proper scope of municipal powers. [Citations.]"

In *Blake* v. *City of Eureka,* 201 Cal. 643, it was said at pages 657-658 [258 P. 945] : ''There can be no question that the improvement of the streets of the city is a municipal affair and that where there is a conflict between the city charter and the general law in a merely municipal affair the provisions of the charter control. [Citing cases.]''

The proceeding taken under the Street Improvement Act of 1911 by which the plaintiff's predecessor in interest acquired the lien on the property was such a street improvement proceeding and unquestionably a municipal affair. The subsequent proceeding under the Street Opening Act of 1903 was to acquire property for the improvement of a city street and was likewise unquestionably a municipal affair. If the holder of the bond lien had been made a party to the latter proceeding the amount now sought to be recovered by the plaintiff would have been paid in due course by assessment on lands benefited by the improvement or by funds otherwise under the control of the city.

The matter of presenting claims against the city for money or damages is likewise a municipal affair and the city by charter sections 363 and 376 has prescribed a reasonable time within which claims must be presented before suit may be brought thereon. In the case of *Bancroft* v. *City of San Diego,* 120 Cal. 432 [52 P. 712], the plaintiff owned property in the city fronting on a street which was damaged by reason of the changing of the street grade. This court held that the damage was in a sense a taking of the property as contemplated by the Constitution. The plaintiff failed to present a claim for damages to the city within the six months prescribed by the city charter. The court held that the action should be dismissed for failure to present the claim within the prescribed time. In *Crescent Wharf & Warehouse Co.* v. *City of Los Angeles,* 207 Cal. 430 [278 P. 1028], the Bancroft case was cited wtih approval. Among other cases also cited to support the holding of the Crescent Wharf case is *Western Salt Co.* v. *City of San Diego,* 181 Cal. 696 [186 P. 345], where it was held that there is no general law on the subject of the time when such a claim must be presented to the city and that a city charter so providing is constitutional. Those cases have never been overruled or criticized and there has been and is no authority in this state to the contrary until the holding of the majority in the present case.

Furthermore, the charter provision is controlling irrespective of whether it concerns a municipal affair if it is not

inconsistent with state law and may even provide for matters of general concern when there is no state law on the subject. (*Esberg* v. *Badaracco*, 202 Cal. 110, 116 [259 P. 730].) Here the matter of filing a claim against the city such as here involved is not only a municipal affair, but there is no state law on the subject. The state has not, as the majority holds, occupied the field to the exclusion of inverse condemnation claim filing requirements in municipal charters. In fact, there is no state legislation whatsoever on the subject, and hereafter there will be no applicable charter provisions on the subject.

The majority rely on cases in which statutes specify the time for filing claims, such as cases arising under the Public Liability Act of 1923, to which Government Code, section 53052, applies. As noted, there is no statute applicable to claims arising under the circumstances here presented. In *Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225], a case where the Public Liability Act applied, the court stated that a municipality may adopt a charter provision regulating the presentation of claims and the terms thereof are applicable to a cause of action against the city where "there is no general law upon the subject." There is no general law on the subject of the time of filing of inverse condemnation claims and the provisions of sections 363 and 376 of the charter of the city of Los Angeles are fully applicable to the claim here involved.

I would affirm the judgment.

Spence, J., concurred.

Respondent's petition for a rehearing was denied March 7, 1957. Dooling, J. pro tem., participated therein in place of McComb, J. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.